UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARGARET L. GILMORE<br>Plaintiff | ) ) ) | |
| | ) | Civil Action No.  04-12323-PJB |
| v. | ) ) | |
| AMERICAN CRUISE LINES, INC.<br>Defendant | ) ) ) ) | |

**AFFIDAVIT OF BERTRAM E. SNYDER, ESQ. IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO SIGN HIPAA
AUTHORIZATIONS AND TO BE EXAMINED BY DEFENDANT'S PSYCHIATRIST**

Now comes Bertram E. Snyder being duly sworn, deposes and says:

1)    I am lead trial counsel for the defendant in the captioned litigation.

2)    The following documents are true and accurate copies of documents obtained or

generated as a result of discovery to date:

1)    Plaintiff's complaint;

2)    Plaintiff's Answer to Defendant's interrogatories;

3)    August 15, 2005 Bertram E. Snyder, Esq. letter to Carolyn Latti, Esq.;

4)    August 22, 2005 Carolyn Latti, Esq. letter to Bertram E. Snyder, Esq.;

5)    September 9, 2005 Bertram E. Snyder, Esq. letter to Carolyn Latti, Esq.;

6)    September 14, 2005 report of Dr. Harold J. Bursztajn;

7)    Curriculum Vitae (partial) Dr. Harold J. Bursztajn;

8)    May 6, 2004 report of Donald DeBlock, Ph.D. – clinical psychologist to Harold Jacobi, Esq., plaintiff's father and attorney.

Signed under the pains and penalties of perjury this 24th day of September 2005.

_____
Bertram E. Snyder

1

RPT # _____ N/A
JNT S _____ N/A
MONS ISSUED _Y-1_
L RULE 4 1 _____
ER FORM _____
ISSUED _____
PTY. CLK _____ m
_11-2-04_

# UNITED STATES DISTRICT COURT
## for the
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARGARET L. GILMORE<br>**Plaintiff**<br><br>V.<br><br>AMERICAN CRUISE LINES, INC.<br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action

No. _____

04    12325    NG

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes the Plaintiff in the above-entitled matter and for her complaint states:

### General Factual Allegations

1.  The Plaintiff, Margaret L. Gilmore, is a resident of Savannah, County of Chatham, State of Georgia.

2.  The Defendant, American Cruise Lines, Inc., is a corporation, duly organized and existing under the laws of the State of Connecticut.

3.  On or about August 5, 2002, the Defendant, American Cruise Lines, Inc.. was doing business within the Commonwealth of Massachusetts.

4.  On or about August 5, 2002, the Plaintiff, Margaret L. Gilmore, was employed by the Defendant, American Cruise Lines, Inc.

5.  On or about August 5, 2002, the Plaintiff, Margaret L. Gilmore, was employed by the Defendant, American Cruise Lines, Inc., as a seaman, and a member of the crew of the AMERICAN EAGLE.

6.     On or about August 5, 2002, the Defendant, American Cruise Lines, Inc., owned the AMERICAN EAGLE.

7.     The Defendant, American Cruise Lines, Inc., chartered the AMERICAN EAGLE from some other person or entity such that on or about August 5, 2002 the Defendant, American Cruise Lines, Inc. was the owner pro hac vice of the AMERICAN EAGLE.

8.     On or about August 5, 2002, the Defendant, American Cruise Lines, Inc., operated the AMERICAN EAGLE.

9.     On or about August 5, 2002, the Defendant, American Cruise Lines, Inc., or the Defendant's agents, servants, and/or employees, controlled the AMERICAN EAGLE.

10.     On or about August 5, 2002, the AMERICAN EAGLE was in navigable waters.

11.     On or about August 5, 2002, while in the performance of her duties in the service of the AMERICAN EAGLE, the Plaintiff, Margaret L. Gilmore, sustained personal injuries.

12.     Prior to and at the time she sustained the above-mentioned personal injuries, the Plaintiff, Margaret L. Gilmore, was exercising due care.

### Jurisdiction

13.    This Court has subject matter jurisdiction over this matter pursuant to The Merchant Marine Act of 1920, commonly called the Jones Act, 46 U.S.C., §688 et. seq.

14.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, 28 U.S.C. §1332, and 28 U.S.C. §1333.

2

## COUNT I

### Margaret L. Gilmore v. American Cruise Lines, Inc.

### (JONES ACT NEGLIGENCE)

15.    The Plaintiff, Margaret L. Gilmore, reiterates the allegations set forth in paragraphs 1 through 14 above.

16.    The personal injuries sustained by the Plaintiff, Margaret L. Gilmore, were not caused by any fault on her part but were caused by the negligence of the Defendant, its agents, servants and/or employees.

17.    As a result of said injuries, the Plaintiff, Margaret L. Gilmore, has suffered pain of body and anguish of mind, lost time from her usual work and pursuits, incurred medical expenses, and has sustained and will sustain other damages as will be shown at trial.

18.    This cause of action is brought under the Merchant Marine Act of 1920, commonly called the Jones Act.

WHEREFORE, the Plaintiff, Margaret L. Gilmore, demands judgment against the Defendant, American Cruise Lines, Inc., in the amount of Ten Million Dollars ($10,000,000.00) together with interest and costs.

## COUNT II

### Margaret L. Gilmore v. American Cruise Lines, Inc.

### (GENERAL MARITIME LAW - UNSEAWORTHINESS)

19.    The Plaintiff, Margaret L. Gilmore, reiterates the allegations set forth in paragraphs 1 through 14 above.

20.    The personal injuries sustained by the Plaintiff, Margaret L. Gilmore, were due to

no fault of hers, but were caused by the Unseaworthiness of the AMERICAN EAGLE.

21.    As a result of said injuries, the Plaintiff, Margaret L. Gilmore has, suffered pain of body and anguish of mind, lost time from her usual work and pursuits, incurred medical expenses, and has sustained and will sustain other damages as will be shown at trial.

22.    This cause of action is brought under the General Maritime Law for Unseaworthiness and is for the same cause of action as Count I.

WHEREFORE, the Plaintiff, Margaret L. Gilmore, demands judgment against the Defendant, American Cruise Lines, Inc., in the amount of Ten Million Dollars ($10,000,000.00), together with interest and costs.

## COUNT III

### Margaret L. Gilmore v. American Cruise Lines, Inc.

### (GENERAL MARITIME LAW - MAINTENANCE AND CURE)

23.    The Plaintiff, Margaret L. Gilmore, reiterates all of the allegations set forth in Paragraphs 1 through 14 above.

24.    As a result of the personal injuries described in paragraph 11 above, the Plaintiff, Margaret L. Gilmore, has incurred and will continue to incur expenses for her maintenance and cure.

WHEREFORE, the Plaintiff, Margaret L. Gilmore, demands judgment against the Defendant, American Cruise Lines, Inc., in the amount of Two Hundred Thousand dollars ($200,000.00) for maintenance and cure, together with costs and interest.

4

### COUNT IV

#### Margaret L. Gilmore vs. American Cruise Lines, Inc.

#### (GENERAL MARITIME LAW/JONES ACT - INTENTIONAL/NEGLIGENT FAILURE TO PROVIDE MAINTENANCE AND CURE)

25.    The Plaintiff, Margaret L. Gilmore, reiterates the allegations set forth in paragraphs 1 through 14 above.

26.    As a result of the personal injuries described in paragraph 11 above, the Plaintiff, Margaret L. Gilmore, has incurred and will continue to incur expenses for her maintenance and cure.

27.    The Plaintiff, Margaret L. Gilmore, has made demand upon the Defendant, American Cruise Lines, Inc., for the provision of maintenance and cure.

28.    The Defendant, American Cruise Lines, Inc., has negligently, willfully, arbitrarily, and/or unreasonably failed to provide the Plaintiff with maintenance and cure in a timely and adequate manner.

29.    As a result of the Defendant's failure to provide the Plaintiff maintenance and cure, the Plaintiff has sustained and will continue to sustain damages, including without limitation, pain of body and anguish of mind, lost time from her usual work and pursuits, medical and hospital expenses, attorneys fees, and has sustained and will sustain other damages as will be shown at trial.

WHEREFORE, the Plaintiff, Margaret L. Gilmore, demands judgment against the Defendant, American Cruise Lines, Inc., in the amount of Four Hundred Thousand Dollars ($400,000.00), as compensatory damages for failure to pay maintenance and cure, together with

costs, interest, and reasonable attorneys fees.


PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES

RAISED IN COUNTS, I, II, III AND IV.


Respectfully submitted for the
Plaintiff, Margaret L. Gilmore,
by her attorney,

Carolyn M. Latti, BBO 567394
David F. Anderson, BBO 560994
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000


Dated: November 1, 2004

2

# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF MASSACHUSETTS

MARGARET L. GILMORE )
    Plaintiff )
)
)
V. )
)      Civil Action
)
AMERICAN CRUISE LINES, INC. )    No. 04-12323-NG
    Defendant )
)

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO THE PLAINTIFF

Q. #1.  Please list the names and last known addresses of all medical providers – e.g. doctors, hospitals, psychologists, nurse practitioners, HMO's who have given medical care to plaintiff for the period August 5, 2000 to date.

A. #1.

Donald DeBlock, M.D.
P.O. Box 2696
176 South Bay Road
South Hamilton, MA 01982

Naomi Rucker, M.D.
315 Commercial Drive
Savannah, GA 31406

Miles Memorial Hospital
35 Miles Street
Damariscotta, ME 04543

Dr. Kimberly Pearson
15 Parkman Street, #812
Boston, MA 02114

Dr. Michael Jackson
5311 Paulsen Street
Savannah, GA 31405

Dr. Ilan Borenstein

1

4849 Paulsen Street, Ste. 314
Savannah, GA 31405

Dr. Charles R. Tatum
Webb & Tatum OB Gyn Associates
901 E. Cheves Street, Ste. 300
Florence, SC 29506

Emerson Hospital
133 Old Road to Nine Acre Corner
Concord, MA 01742

Dr. Bill Immel
Barnabas Center for Counseling
7 Oglethorpe Professional Bldg, S-1
Savannah, GA 31406

Memorial Health University Hospital
4700 Waters Ave.
Savannah, GA 31404

Candler Hospital
5353 Reynolds Street
Savannah, GA 31405

Assisted Recovery Center of GA, Inc.
7722 Waters Avenue
Savannah, GA 31406

Remuda Ranch
One East Apache Street
Wickenburg, AZ 85390

Dr. Martha Womack
23 East 38th Street
Savannah, GA 31401

Dr. Sandeep Jain
Internal Medicine Department
242 Baker Avenue
Concord, MA 01742

Carolinas Hospital System
805 Pamplico Highway
Florence, SC 29505

McLeod Regional Medical Center
555 East Cheves Street
Florence, SC 29501

MEDA
92 Pearl Street
Newton, MA 02458

Savannah Perinatology Associates
4750 Waters Ave
Savannah, GA 31404

The Chopra at Memorial Health
300 Bull Street, Suite 102
Savannah, GA 31401

Clear Brook, Inc.
1100 E. Northhampton Street
Wilkes-Barre, PA 18706

Q. #2.  Please list all prescription medications being taken by plaintiff on the following dates
with the name and address of the prescription medication provider and the reason for the
use of said medication:

    1.    August 5, 2002.
    2.    From August 5, 2000 to August 4, 2002.
    3.    From August 6, 2002 to present.

A. #2.  1.    August 5, 2002:

    Prozac
    Seroquel
    Ambien

    2.    August 5, 2000 to August 4, 2002:

    Prozac
    Reglan/Onc IV
    Toradol (IV)
    Demerol
    Vistaril
    Dulcolax
    MSO4
    Oxycontin
    Ativan
    Lorazepam

3

Gastrogafin
Wellbutrin
Neurontin
Seroquel
Zyprexa
Ativan
Ambien
Fluoxetine
Buproprion
Lorazepam

3.    August 6, 2002 to present:

Demerol
Phenergan
Stadol
Bicitra
Butorphanol Tartrate
Meperidine HCL
Promethazine HCL
Ativan
Tylenol #3
Stadol
Fioricet
Ambien
Acetaminophen-Codeine (Tylenol w/Codeine #3)
Pseudoephedrine HCI
Stadol IV
Ampicillin
Extra strength acetaminophen
Acetaminophen with Codeine
Acetaminophen with Oxycodone HCI
Benzocaine
Percocet
Prozac
Fluoxetine
Ortho Evra Patches
Imitrex
Lorazepam
Amoxicillin
Phenobarbital
Naltrexone
Vistaril
Zofran
Dilaudid
Propoxyphene

4

Pantoprazole
Protonix
Ondansetron
Zolpidem Tartrate
Zantac
Morphine
Famotidine
Darvocet
Nitrofurantoin
Zithromax
Vicodin
Lortab

Q. #3. With respect to the medications Prozac and Seroquel, please state when plaintiff first started taking each medication, the name and address of the initial prescription provider, what condition(s) it prescribed for and if plaintiff does not continue to use, when plaintiff stopped using each medication.

A. #3. Plaintiff started taking Prozac when she was in her teens.

Plaintiff starting taking Seroquel at Remuda in Winter 2002.

Please see answer to Interrogatory #2.

Q. #4. Please list by name and address all drug stores who have filed any prescriptions listed in answers to Interrogatories 2 and 3.

A. #4. CVS
Route 20 Sudbury Plaza
501 Boston Post Road
Sudbury, MA 01776

CVS
Wayland Shopping Center
Route 20
313 Boston Post Road
Wayland, MA 01778

Walgreen's
11505 Abercorn Street
Savannah, GA 31419

CVS

5

2501 Second Loop Road
Florence, South Carolina 29501

See answer to Interrogatory #2.

Q. #5.  Please list the State of Maine county or city, investigative bodies, if any, - a grand jury as an example, where plaintiff gave testimony – either in person or by written statement, the date of said testimony and if testimony in person the location where said testimony was given.

A. #5.  Plaintiff gave an account of the sexual assault to the police/district attorney on the date of the sexual assault.  Plaintiff also gave testimony before the grand jury sometime the week of August 12, 2002.

Plaintiff testified at the Rule 11 and sentencing hearing of Michael A. Romero on June 30, 2003 at the Superior Court in Lincoln County, Criminal Action No.: CR-02-108. Said testimony has been provided to Defendant.

Q. #6.  From August 4, 2002 to the present which members of the crew of the MV AMERICAN EAGLE and/or employees of American Cruise Lines, Inc. (ACL) did you speak to, on what date, and what do you recall saying to each and what did each say to you.

A. #6.  Objection.  Plaintiff's counsel objects to Interrogatory #6 on the grounds that it overbroad, not reasonably calculated to lead to discoverable information, unduly burdensome.

Notwithstanding the objection and without waiving the same, from August 4, 2002 up and until the time Plaintiff left the vessel she spoke to various members of the crew from the Captain, Adam Cutone, Paul Tacilet, Catherine Swords, Michael Romero to other crew members that Plaintiff does not remember the names of.

Prior to the sexual attack by Mr. Romero, Plaintiff had small talk with the crew introducing herself and meeting everyone.

On August 4, 2002, Plaintiff met the Captain and the first mate around 10:00 am.  At lunch, the Plaintiff sat with Adam Cutone, Paul Tacilet and the first mate.  Paul Tacilet and Adam Cutone took the Plaintiff into the kitchen to get lunch and to introduce Plaintiff to the cook and the chef, Michael Romero.  Less than 10 minutes later, Michael Romero, came out to sit at the table. During this time, Mr. Romero and Mr. Tacilet talked about opening up a brothel at sea.  Plaintiff asked if he was married and what his wife would say about it and Mr. Romero said " if she bitched-sign the divorce papers-bye-bye."

6

After the attack, Plaintiff remembers talking with the Captain, Mr. Cutone, Ms. Swords and other crew members who she does not remember their names. Since Plaintiff has left the vessel she has not talked with any crew members.

Plaintiff did speak with a woman in the home office after the sexual attacks regarding her pay.

See answer to Interrogatory #7, 8.

Q. #7. Does plaintiff or anyone acting for the plaintiff have any written or recorded statements of witnesses to the events of August 5, 2002.

A. #7. Yes.

Q. #8. If the answer to Interrogatory No. 7 is yes, please state the names, addresses of each person giving the statement, the date said statement was obtained – whether written or recorded and the name and address of the person obtaining said statement.

A. #8. James Comfort, Jr. an employee of Latti & Anderson LLP, 30-31 Union Wharf has taken a tape recorded statement of the following individuals:

Heather Bartlett
359 Eastview Avenue
Somerset, MA 02726
December 31, 2004

Carrie Deschene
90 Ashland Street, Apt. B
Jewett City, CT 06351
April 7, 2005

Ruark Downey
470 15th Street
Brooklyn, NY 11215
November 29, 2004

Benjamin Kirchmyer
1130 Pond Street
Franklin, MA 02038
April 7, 2005

Lindsay Raczka
301 Bozrah Street
Bozrah, CT 06334
April 5, 2005

7

Ben Rosenblatt
185 15th Street
NY, NY
November 22, 2004

Kate Swords
12 State St.
Westfield, MA 01085
December 16, 2004

Q. #9. For the period August 6, 2000 to the present, please state the names and addresses of all
plaintiff's employer's, the dates of said employment, the plaintiff's present job
responsibilities and the amounts earned.

A. #9. Prior to the sexual attacks, Plaintiff worked in the following jobs:

2002    Jacobi & Associates, P.A.
        Four Militia Drive, Suite 14
        Lexington, MA 02421

        Dr. Paul Flachner
        Lincoln, MA

        Ulta Salon and Cosmetic & Fragrance, Inc.
        1135 Arbor Drive
        Romeoville, IL 60446

        New Vista Enterprises LLC
        Suite 203 313 S Greene Street
        Greensboro, NC 27401

        American Lines Ltd
        One Marine Park
        Haddam, CT 06348

2001    Westbrook Country Club
        Savannah, GA
        Membership director

        Jacobi & Associates, P.A.
        Four Militia Drive, Suite 14
        Lexington, MA 02421

        Hall Construction Company, Inc.
        P.O. Box 3908

8

Myrtle Beach, SC 29578-3908

My Girl Friday
Event Planner
Amarillo, Texas

2000   Cumulus Broadcasting Inc.
875 North Michigan Avenue #3650
Chicago, IL 60611-1947
WJLT-AM
Board operator and on air personality

La Paloma Golf Club, LLC
4502 Fairway Drive
Amarillo, Texas 79124

My Girl Friday
Event Planner
Amarillo, Texas

Since the sexual assaults by Mr. Romero, Plaintiff has not worked.

Q. #10. For the period August 5, 1997 to August 5, 2002, please state all the addresses where plaintiff resided.

A. #10.     2002

49 New Bridge Road
Sudbury, MA 01776

Hoover Creek Plantation
Apache Avenue
Savannah, GA

5337 Unaka Ave.
Charlotte, SC 28205

2001

Windtree Apartments
Amarillo, TX

3402 McCall Street
Amarillo, TX

49 New Bridge Road
Sudbury, MA 01776

2000

49 New Bridge Road
Sudbury, MA 01776

Q. #11. If plaintiff claims there were eye witnesses to any of the allegations in plaintiff's
complaint, please state the names and addresses of said eye witnesses.

A. #11. Michael Romero
Adam Cutone
Paul Tacilet
Catherine Swords
Benjamin Kirshoffer
Capt. Howes
Crew members and passengers on the AMERICAN EAGLE

Q. #12. Please list by medical provider, and date of service, all medical expenses claimed by
plaintiff as a result of the incident complained of in her complaint.

A. #12. Donald DeBlock, M.D.
P.O. Box 2696
176 South Bay Road
South Hamilton, MA 01982

See medical bills provided

Naomi Rucker, M.D.
315 Commercial Drive
Savannah, GA 31406
Approximately $1,350.00
1/8/04: $150.00
1/15/04: $150.00
1/20/04: $150.00
2/6/04: $150.00
2/13/04: $150.00
2/19/04: $150.00
2/26/04: $150.00
3/5/04: $150.00
3/5/04: $150.00

10

Miles Memorial Hospital
35 Miles Street
Damariscotta, ME 04543
Approximately $849.80
8/5/02: Lab – $194.80
        ER – $700.00

Q. #13. Please state when plaintiff was initially treated for bulimia and the name and address of all medical providers who treated her for said condition.

A. #13. Ann K. Willard
1 Washington Street
Wellesley, MA 02481

Donald DeBlock, M.D.
P.O. Box 2696
176 South Bay Road
South Hamilton, MA 01982

Remuda Ranch
One East Apache Street
Wickenburg, AZ 85390

Dr. Kimberly Pearson
15 Parkman Street, #812
Boston, MA 02114

Q. #14. Please list the names and addresses of all family members and any others who have witnessed any of the plaintiff's emotional and/or physical injuries allegedly sustained on August 5, 2002.

A. #14. Wendy Jacobi
49 New Bridge Road
Sudbury, MA 01776

Harold Jacobi
49 New Bridge Road
Sudbury, MA 01776

Carrie Neitch
3 Antique Circle
Sudbury, MA 01776

Crystal Laney

11

24 Fountain Road
Arlington, MA


Mark Gilmore
P.O. Box 61237
Savannah, GA 31420


Q. #15. Please identify each person whom you expect to call as an expert witness at trial, giving
the expert's name and address, the subject matter on which the expert is expected to
testify, the substance of the facts and opinions to which the expert is expected to testify,
and the grounds for his/her opinion(s).


A. #15. Objection.  Plaintiff's counsel objects to Interrogatory #15 on the grounds that it is
premature.  Plaintiff will provide the information in accordance with the Court's order.

Notwithstanding the objection and without waiving the same, Plaintiff states

Donald DeBlock, M.D.
P.O. Box 2696
176 South Bay Road
South Hamilton, MA 01982

Naomi Rucker, M.D.
315 Commercial Drive
Savannah, GA 31406

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _____ 8th DAY
OF ___August_____, 2005.

_____
MARGARET L. GILMORE

3

# Looney & Grossman LLP
### Attorneys at Law

Bertram E. Snyder
Voicemail: Ext 543
Email: bertsnyder@lgllp.com

101 Arch Street
Boston, Massachusetts 02110-1112
Telephone (617) 951-2800
Telecopier (617) 951-2819
www.lgllp.com

August 15, 2005

Carolyn Latti, Esq.
Latti & Anderson
30-31 Union Wharf
Boston, MA 02109

> Re:  **Margaret L. Gilmore (Nee Jacobi)  v. American Cruise Lines, Inc.**
> **MV AMERICAN EAGLE DOA August 5, 2002**
> **Civil Action No. 04-12323 NG**
> **Our File No. 1372.077**

Dear Ms. Latti:

We acknowledge receipt on August 11th of the plaintiff's answers to defendant's first set of interrogatories. We enclose record keeper notice of depositions of all those listed in answer to interrogatory no. 1 except for Donald DeBlock and Naomi Rucker whose deposition notices we previously had submitted and for whom you have previously provided executed HIPAA Authorization Forms.

Attached to all the notices of deposition are HIPAA Authorization Forms which we ask you to arrange for your client to execute and then return to us. When we receive the executed HIPAA forms we will issue the subpoenas for the records. We will provide you copies of any records obtained.

If you have any questions, please advise.

Very truly yours,

Bertram E. Snyder

BES/ldo
Enclosures

L\1372\077\Ltr 15

4

# LATTI & ANDERSON LLP

*Counsellors At Law and Proctors In Admiralty*

30-31 Union Wharf, Boston, Massachusetts 02109  (617) 523-1000
Portland, ME  (207) 874-6464
Facsimile (617) 523-7394

DAVID F. ANDERSON**
CAROLYN M. LATTI*
DAVID J. BERG***

OF COUNSEL
MICHAEL B. LATTI

WITH OFFICES AT
46 Union Street, New Bedford, MA 02740  (508) 999-1029
35 Main Street, Gloucester, MA 01930  (978) 281-0605
*ALSO ADMITTED IN ME
**ALSO ADMITTED IN NH & ME
***ALSO ADMITTED IN NH, ME & NY

August 22, 2005

Bertram E. Snyder, Esquire
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

Re:  Margaret L. Gilmore v. American Cruise Lines, Inc.
     Civil Action No: 04-12323-NG

Dear Mr. Snyder:

I am in receipt of your letter of August 15, 2005 noticing keeper of the records depositions of doctors, hospitals, institutions that Mrs. Gilmore saw from 2000 to present. Additionally, you requested that Mrs. Gilmore sign authorizations for you to obtain the records. Plaintiff objects to Mrs. Gilmore signing the authorizations.

On August 5, 2002, an employee of Defendant's, Mr. Romero raped Mrs. Gilmore. Romero broke into the cabin using a master key that was given out by a fellow employee. Romero plead guilty to unlawful sexual conduct and aggravated criminal trespass and was sentence to prison for over a total of three and half years in Maine.

At trial and during her deposition, Mrs. Gilmore will testify how the rape has affected her from nightmares, flashbacks, fear, fear of harm to herself, fear of rape again, fear of men to fear of being alone. We will not be calling an expert witness, doctor, to testify that Mrs. Gilmore suffers from mental illness and/or disorder such as depression, post traumatic stress disorder as a result of the rape. Nor is Plaintiff calling Dr. DeBlock and/or Dr. Rucker. Plaintiff is not claiming lost of past or future lost wages and will not proceed with either of her maintenance and cure claim.

Mrs. Gilmore's records for treatment for her gynecological/obstetrics issues, bulimia, alcohol abuse, stomach problems and other medical conditions are irrelevant to the fact she was raped and what Plaintiff is claiming as a result of the rape. At trial, Plaintiff is not claiming any of her medical conditions are related, aggravated or caused by the rape.

1

# LATTI & ANDERSON LLP

I have already provided you with the records from Miles Memorial Hospital which performed the rape test on the Plaintiff on August 5, 2002. Additionally, I have provided you with complete records of Dr. DeBlock, Plaintiff's treating psychologist from prior to and after the rape. I have also sent you records of Dr. Rucker who Plaintiff saw for several visits after the rape.

Defendants request for authorizations to obtain all of Mrs. Gilmore's medical records from 2000 to present is invasive and intrusive. The records are irrelevant to the claims Mrs. Gilmore is presenting at trial. Mrs. Gilmore should not have to open up her entire medical history for the past five years due to the rape by Defendant's employees.

Very truly yours,

LATTI & ANDERSON LLP

Carolyn M. Latti

CML:dmt

2

5

# Looney & Grossman LLP

### Attorneys at Law

Bertram E. Snyder
Voicemail: Ext 543
Email: bertsnyder@lgllp.com

101 Arch Street
Boston, Massachusetts 02110-1112
Telephone (617) 951-2800
Telecopier (617) 951-2819
www.lgllp.com

September 9, 2005

Carolyn Latti, Esq.
Latti & Anderson
30-31 Union Wharf
Boston, MA 02109

Re:     **Margaret L. Gilmore (Nee Jacobi) v. American Cruise Lines, Inc.**
**MV AMERICAN EAGLE DOA August 5, 2002**
**Civil Action No. 04-12323 NG**
**Our File No. 1372.077**

Dear Ms. Latti:

I respond to your letter of August 22, 2005 in connection with the above and my request for medical authorizations. This letter is written in compliance with Local Rules 7.1 and 37.1.

Your letter, as with your past correspondence, consistently describes a rape which you know has not been established. You are well aware that the rape test did not establish any rape. Regardless of your deliberate misdescription of the incident in an obvious attempt to distort the known facts, your letter is internally inconsistent. You claim that your client will not be testifying that she suffers from any "mental illness and/or disorder such as depression, post traumatic stress disorder" yet you talk about her flashbacks, fears, etc. which are not physical but purely emotional injuries. You cannot deny me the right to have expert medical testimony and in order to have medical testimony I need your client's records. Your clients long history of significant emotional issues creates creditability as well as causation issues for jury determination.

Absent a prompt response from you that you are withdrawing your August 22 objections to having Mrs. Gilmore sign the authorizations, I will move to compel.

Very truly yours,

Bertram E. Snyder

BES/ldo

L:\1372\077\Ltr 15

6

**Harvard Medical School**

Associate Clinical Professor
co-Director
Program in Psychiatry & the Law

**Harold J. Bursztajn, M.D.**

Telephone: (617) 492-8366
FAX: (617) 441-3195
E-MAIL: harold_bursztajn@hms.harvard.edu

September 14, 2005

Bertram E. Snyder, Esq.
Looney & Grossman
101 Arch Street
Boston, MA 02110-1112

Re:    **Margaret L. Gilmore (Nee Jacobi) v. American Cruise Lines, Incl.**
       **MV AMERICAN EAGLE DOA August 5, 2002**
       **Civil Action No. 04-12323 NG**
       **Our File No. 1372.077**

**Analysis of Need for Independent Medical Examination**

Dear Mr. Snyder:

**I**      **Purpose**

Having reviewed and analyzed the Plaintiff's Answers to Interrogatories and the letter
from plaintiff's counsel, Carolyn M. Latti, Esq. (dated 8/22/05), as well as the case
materials previously made available to me (listed below), I offer the reasons outlined
below as to the necessity, from a forensic standpoint, of an independent medical
examination of the plaintiff, consisting of a comprehensive forensic neuropsychiatric
evaluation.

**II**      **Qualifications of Examiner**

I serve as Associate Clinical Professor of Psychiatry, co-Director of the Program in
Psychiatry and the Law, and Principal Mentor for students at Harvard Medical
School. I have 25 years of service as senior clinical faculty at HMS coupled with 25
years of experience in clinical practice as a psychiatrist. Clinically, I treat patients
suffering from neuropsychiatric disorders, such as Post-Traumatic Stress Disorder
(PTSD), as well as patients presenting with symptoms that mimic the effects of post-
traumatic stress, but actually manifest a variety of other conditions such as
personality disorders or developmental and interpersonal problems. As a forensic
psychiatrist I evaluate PTSD-related injury claims and teach regarding standards for
the evaluation of trauma-related injuries. I frequently teach, publish, and blindly peer
review regarding the treatment and evaluation of such patients, and have given peer-

reviewed presentations in a variety of professional settings, including the American Psychiatric Association and the American Academy of Psychiatry and the Law, on the evaluation of alleged neuropsychiatric impairments in the aftermath of trauma as well as on scientific standards for forensic neuropsychiatric methodology and opinion formulation. I serve as a peer reviewer for both forensic psychiatric and general psychiatric journals. I have published and have taught numerous continuing medical, legal, and judicial education courses on the application of the *Daubert/Kumho* standards to forensic psychiatric testimony. I have been qualified as an expert on the evaluation of claims of trauma-related disability, on the evaluation of actual versus malingered or misattributed impairments in the post-traumatic spectrum, and on standards of forensic psychiatric methodology.

At Harvard Medical School I serve as faculty for the Intensive Diagnostic Interviewing preparatory course for the board examinations in psychiatry and neurology, with specific reference to the differentiation of trauma-based impairments from impairments related to preexisting conditions, personality traits, family dynamics, developmental problems, life choices, symptom misattribution, exaggeration, lack of motivation, primary or secondary gain, faking, or malingering. My community and professional activities have involved service on interdisciplinary expert advisory panels on judicial and professional standards for forensic neuropsychiatric methodology and evidence. Such service includes the Mental and Physical Disability Commission of the American Bar Association (ABA), the editorial board of the *Mental and Physical Disability Law Reporter* (an ABA journal), the ethics and gender issues committees of the American Academy of Psychiatry and the Law (AAPL), an AAPL subcommittee on competence assessment, and as an Advisory and Expert Panel Member for the State Justice Institute (SJI) Benchbook Project on Psychiatric and Psychological Evidence of the American Bar Association, as well as the Flaschner Judicial Institute Scientific Advisory Panel. Additional relevant forensic psychiatric experience includes consulting extensively to private, public service, and government organizations as a clinician, risk manager, forensic neuropsychiatrist, and clinical and organizational ethicist. I am licensed to practice medicine in the states of Massachusetts and New Hampshire and consult nationally to physicians across the spectrum of medical specialties, including general medicine and psychiatry, on the diagnosis and treatment of patients presenting with chronic residual impairments attributed to traumatic events. My accomplishments are outlined on my attached Curriculum Vitae.

## III     Basis of Analysis

This analysis is based on an initial review of the following materials:

A.     Miles Memorial Hospital Medical Records
B.     Donald DeBlock, PhD, Psychological Report
C.     Pictures of Plaintiff's Injuries
D.     Lincoln County Police Documents

E.   Naomi Rucker, PhD, Medical Records
F.   Donald DeBlock, PhD, Medical Records
G.   Kimberly Pearson, MD, Medical Records
H.   Plaintiff's Answers to Interrogatories
I.   Letter from Plaintiff's Counsel (8/22/05)

## IV   Analysis

In her letter of 8/22/05, plaintiff's counsel argues that Ms. Gilmore's records of treatment for various medical and psychological conditions are irrelevant to her claims of emotional harm resulting from the incident that occurred on 8/5/02 because Ms. Gilmore does not claim that she suffers from any diagnosed medical or psychiatric disorder as a result of the alleged rape. This argument notwithstanding, a reliable forensic psychiatric evaluation must include a determination of whether the symptoms Ms. Gilmore does claim as resulting from the rape (as listed in her attorney's letter e.g. "nightmares, flashbacks, fear, fear to herself…") may instead be symptoms of preexisting conditions, personality characteristics, side effects of the extensive array of psychotropic medications that she has listed in her answers to interrogatories that she had been and continues to be taking, faking, exaggerating, malingering, or misattribution and displacement of symptoms to a convenient focus of blame. In both clinical and forensic practice, I routinely examine people who may not fit into any psychiatric diagnostic category, but who nonetheless suffer from longstanding, deep-seated emotional distress that they consciously or unconsciously misattribute to a particular event.

Causation cannot be assumed *a priori*. Causation of symptoms and impairments cannot be reliably evaluated in a vacuum, out of context of other developmental and life circumstances that affect a person's feelings, attitudes, and behavior. An analysis of causation that meets accepted professional standards of reliability for forensic psychiatric evaluation needs to consider the claimed symptoms and their alleged cause in light of other possible causes that may emerge from a review of the claimant's medical history and life history.

In Ms. Gilmore's case, the following are among the considerations, documented in the records I have reviewed and analyzed to date, that indicate a need for further exploration of potential symptom misattribution:

1.   Ms. Gilmore's financial and emotional dependency on her parents. For example, in an eating-disorders assessment one year before the assault (9/12/01), Kimberly Pearson, M.D., notes "significant conflict and likely a hostile-dependent relationship with her father."

2.   Ms. Gilmore's prior adjustment problems, as reflected in her employment record and interpersonal relationships.

3.  Ms. Gilmore's having described her emotional state one year before the assault (Dr. DeBlock's records, 8/14/01) as follows: "Deep sadness and shame. Feels like a failure. Agoraphobia and panic attacks." Thus, Ms. Gilmore's generalized fear of harm and fears of leaving her home and being out in public did not originate with the assault, contrary to the claims in her attorney's letter. Such statements as this provide a basis for challenging her assertion after the assault (3/5/03) that "I was strong and independent and outgoing" (i.e., before the assault).

4.  Ms. Gilmore's fear of unspecified sexual trauma, mentioned in her treatment records as early as 1/5/99. The extent to which Ms. Gilmore may have been predisposed to see herself as a victim of such trauma needs to be explored.

5.  A preexisting as well as persisting pattern of risk-seeking behavior often found in individuals with dependent personalities. Indications of a risk-seeking profile in Ms. Gilmore's history include: bulimia with purging, alcohol abuse accompanied by denial and resulting in a DUI conviction, and staying with her physically abusive husband.

6.  Ms. Gilmore's weak motivation for treatment and poor insight and progress in therapy, reflected in therapists' direct comments as well as in a pattern of lateness for sessions and repeated discontinuations of therapy and changes of therapists (documented in the records of Drs. DeBlock, Pearson, and Rucker).

7.  Spousal abuse, reportedly beginning not long after the alleged assault, perpetrated by the man to whom Ms. Gilmore was reportedly engaged at the time of that incident. This history raises the substantial question of the extent to which the "fear of men" mentioned in Ms. Gilmore's attorney's letter is attributable to the sexual assault versus being married to a man who reportedly was accused of "battery and cruelty to children" in November 2004 and who subsequently went to court on charges of child endangerment and domestic violence. A reliable forensic evaluation cannot (as Dr. DeBlock did in his report) simply accept Ms. Gilmore's self-reports attributing her marital problems to the allegedly traumatic assault while failing to consider her husband's physical violence toward her.

8.  The impact of having children (a major life change that has occurred during the period when she has allegedly been affected by the sexual assault), either as an added stressor in Ms. Gilmore's life or as a source of social capital and a role she can fill more satisfactorily than the work roles she had previously attempted.

9.  Data throughout her treatment records consistent with Ms. Gilmore's potentially seeking secondary gain from shifting her own and others' attention from her multiple preexisting problems in life, as well as from potentially stigmatizing prior diagnoses, to the sexual assault as both a sympathy-eliciting

5

event and as a passive and convenient focus of blame for limitations and deficiencies in her life that she has been unwilling or unable to confront in or out of therapy. For example, in Dr. DeBlock's records she brings up the rape and its impact as an explanation for problems ranging from her rudeness and irritability (already documented in her records before the assault) to her not having enjoyed her pregnancy.

To perform a methodologically reliable analysis of the bearing these and similar considerations have on the merit of Ms. Gilmore's claims, an independent medical examination consisting of a comprehensive forensic neuropsychiatric evaluation will be required. The evaluation will include a Rule 35 forensic neuropsychiatric examination of Ms. Gilmore, consisting of a structured and unstructured interview and objective psychological testing, including observation and testing for faking, malingering, exaggerating, and misattribution of symptoms. To insure optimum validity, such an examination needs to be private, without the presence of third parties or recording devices. It will also be necessary to review all medical and other records relevant to resolution of the questions of causal attribution and misattribution raised above.

Yours very truly,

Harold J. Bursztajn, M.D.

7


Harvard Medical School

**Forensic Psychiatry & Medicine**                    **Curriculum Vitae of**
**Harold J. Bursztajn, MD**

HAROLD J. BURSZTAJN, M.D.
Associate Clinical Professor
Harvard Medical School
Cambridge, MA 02138
(617) 492-8366

PERSONAL INFORMATION

- Born November 18, 1950
- Married

EDUCATION

- 1968: Diploma, Eastside High School, Paterson, NJ
- 1972: A.B. Princeton University, Princeton, NJ
- 1977: M.D. Harvard Medical School, Boston, MA

POSTDOCTORAL TRAINING

- Internships and Residencies:
  - 1977-1978: *Resident in Pediatrics*, Children's Hospital Medical Center
  - 1979-1982: *Resident in Psychiatry*, Massachusetts Mental Health Center
  - 1981-1982: *Chief Resident*, Program in Psychiatry and the Law, Massachusetts Mental Health Center
- Fellowships and Other Education:
  - 1975-1976: *Special Fellow*, Department of Preventive and Social Medicine, Harvard Medical School
  - 1978-1980: *Research Fellow*, Division of Family Medicine and Primary Care, Harvard Medical School
  - 1981: *Special Student*, Harvard Law School
  - 1981: *Candidate*, Boston Psychoanalytic Institute
  - 1989: *Advanced Candidate*, Boston Psychoanalytic Institute

LICENSURE AND CERTIFICATION

- 1978: Massachusetts, #43038
- 1982: New Hampshire, #6592
- 1984: American Board of Psychiatry and Neurology, #26278
- 1994: American Board of Psychiatry and Neurology Added Qualifications in Forensic Psychiatry, #38
- 2001: National Institute of Health Office of Human Subjects Research computer-based training course on the Protection of Human Research Subjects, #979405050

Daubert. In: Lifson LE, Simon RI, eds. The Mental Health Practitioner and the Law. Cambridge, MA: Harvard University Press, 1998; 262-280.

22. Bursztajn HJ. Responses to a defective managed care product: medical negligence, lack of informed consent, and choicelessness. In: 2000 Wiley Expert Witness Update. New York: Aspen Law Business/Panel Publishers, 2000; 239-264.

23. Bursztajn HJ, Brodsky A. Competence and insanity. In: Jacobson JL, Jacobson AM, eds. Psychiatric Secrets. 2nd ed. Philadelphia: Hanley & Belfus, 2000; 485-498.

24. Deaton RJS, Bursztajn HJ, Brodsky A. The role of the mental health professional in employment litigation. In: McDonald JJ, Jr, Kulick FB, eds. Mental and Emotional Injuries in Employment Litigation. 2nd ed. Washington DC: The Bureau of National Affairs, 2001; 50-71.

25. Bursztajn, HJ, Boersema, RR. Forensic and therapeutic issues in stepparent adoptions: a psychoanalytic perspective. In: Cath SH, Shopper M, eds. Stepparenting: creating and recreating families in America today, NY: Analytic Press.

- Books

  1. Reiser SJ, Bursztajn HJ, Gutheil TG, Appelbaum PS. Divided Staffs, Divided Selves: A Case Approach to Mental Health Ethics. Cambridge, U.K.: Cambridge University Press, 1987.

  2. Bursztajn HJ, Feinbloom RI, Hamm RM, Brodsky A. Medical Choices, Medical Chances: How Patients, Families, and Physicians Can Cope With Uncertainty. New York: Delacorte, 1981; New York: Routledge, Chapman & Hall, 1990.

  3. Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991.

COURSE CO-DIRECTOR AND FACULTY

- Harvard Medical School, Department of Continuing Education and Massachusetts Mental Health Center:
  "Ethical Issues in Clinical Practice," September 1990.
  "Sex Between Clinicians and Patients: Clinical, Legal and Medico-Legal Perspectives," September 1990.
  "Malpractice Prevention for the 1990s: An Update on the Issues and Practical Approaches," January 1991.
  "The Clinician in Court: A Survival Guide," January 1992.
  "Dangers and Pitfalls of Forensic Practice," January 1992.
  "Liability Prevention for Medical and Surgical Practitioners: Trends and Update," January, 1993.
  "Doctors and Nurses in Court: A Basic Survival Guide," January, 1993.
  "Malpractice in the 1990s: Trends and Update," February, 1993.
  "The Clinician in Court: A Survival Guide," February, 1993.
  " Massachusetts Bar Association, Continuing Legal Education Course:
  "Nuts and Bolts of Using Medical Experts at Trial," November 1990.

FACULTY

- Harvard Medical School, Department of Continuing Education and Massachusetts Mental Health Center:
  "Intensive Diagnostic Interviewing," 1990-.

PRESENTATIONS

1. "Prevention of Violence and Suicide by the High-Risk Patient." Mount Auburn Hospital Grand Rounds, Cambridge, MA, September 15, 1992.

2. "Malpractice Prevention." Brookside Hospital Grand Rounds, Nashua, NH, March 15, 1993.

3. "Post-Traumatic Stress Disorder in the Courtroom." Panel, American Psychiatric Association, San Francisco, CA,

8

# DONALD DEBLOCK, PH.D.
## CLINICAL PSYCHOLOGIST
### NORTH SHORE PSYCHOLOGICAL SERVICES, P.C.

P.O. BOX 2696
SOUTH HAMILTON, MA 01982
PHONE (978) 468-7671
FAX (978) 468-9720

May 6, 2004

Mr. Harold Jacobi
49 New Bridge Road
Sudbury, MA 01776

Psychological Report concerning assault – Margaret Jacobi

On August 6, 2002, Margaret Jacobi talked with me in my office to begin treatment for trauma. She reported to me that she had been assaulted the night of the previous day by an employee of the cruise ship for which she had just begun to work. She described the attack to me during this session. She remembered waking up in a room with a man lying on top of her grabbing her breasts. He had a strong smell of alcohol on him. She realized that she did not have underwear on even though she had gone to sleep with underwear on. The man was naked from the waist down. She told him to get out and he told her they had just had sex. She was disoriented and extremely frightened, and yelled at him and pushed him off her and out of her cabin. She had taken Seraquil, a prescribed medication for sleep and was disoriented from this medication. She was able to get out of the room and get him out of the room. She looked for the captain but was unable to find him. She was still very groggy and went back to sleep. She remembered him coming back again and waking her from a dead sleep. She said that she was deathly afraid that she was going to be raped. He talked and acted in a threatening manner, including removing clothing forcefully, banging her head against the wall and stating that she could have it hard or easy. Margaret reported that he was drunk. She was able to break loose from him, and ran out of the cabin and found the captain and a security guard. Margaret shared these events with the police and then was escorted to the hospital where she underwent a rape crisis exam by a local doctor.

Following these two attacks in one night, we immediately began to work on issues of trauma. She presented with symptoms of Post Traumatic Stress Disorder. She described feeling dirty, having overwhelming fears of being attacked again, and wanting to deny what happened and the impact on her. It became more apparent that she suffers from Post Traumatic Stress Disorder. Following the attack, she continued to be aware of new fears and anxieties. She began to dream about the attack and have flashback memories. She slept with the light on and has continued to have great difficulty sleeping. In March of 2003, she began to take Prosac to help her manage the fears and anxiety generated by the rape. There has been an ongoing fear of being alone, especially at night, which she directly connects to the assault.

In April, May, and June of 2003, Margaret had to relive the whole experience as the perpetrator of the assault was facing trial in Maine. It was extremely traumatic for her to

provide information to the police and to relive the attack because she was flooded with overwhelming memories and emotions. She traveled to Maine accompanied by her parents in late June of 2003 where she had to confront her perpetrator and testify in court. Margaret reported that the attacker pled guilty to three counts of assault and admitted penetration during the attack. He was sentenced to state prison. Margaret continues to suffer from Post Traumatic Stress Disorder. Even though she is aware that he is in prison, she continues to fear her attacker. She is frightened by men with physical characteristics of the man who assaulted her or strangers in general.

Margaret continues in treatment on at least a weekly basis. Her parents have participated as collaterals in treatment on a few occasions to better understand the impact of trauma and to support their daughter in her treatment. Ongoing anxiety symptoms include compulsive checking of doors and locks, fear of public places, fear of getting out of her car in a parking lot, hypervigilance, and a general distrust of people. She reports "I'm totally scared and I've never been scared before". She also states, "I now see men differently. I was strong and independent and outgoing. Now, I'm scared and afraid to be alone and sleep alone". The assault has also impacted her marriage. She hates to be kissed or hugged. She is aware that multiple aspects of the attack have affected her ability to trust and be intimate in her marriage. Because of trust issues, she has had difficulty finding a new therapist in Savannah. Finally, she has successfully begun to work with a new psychologist in Savannah who will continue to treat her for Post Traumatic Stress Disorder. She continues in treatment with me as she works on transitioning to a new therapist.

Sincerely,

Donald DeBlock, Ph.D.