UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET L. GILMORE<br>Plaintiff<br><br>v.<br><br>AMERICAN CRUISE LINES, INC.<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  04-12323-PJB

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
PLAINTIFF TO SIGN HIPAA MEDICAL AUTHORIZATIONS AND TO BE
EXAMINED BY DEFENDANT'S PSYCHIATRIST**

**I.     FACTS[1]**

On or about November 1, 2004 Margaret L. Gilmore[2] filed suit claiming injuries

sustained on or about August 5, 2002 while acting as a seaman and member of the crew of

Defendant American Cruise Lines, Inc.'s ("ACL") AMERICAN EAGLE.  (Complaint ¶s 5, 11).

Her injuries included "anguish of mind" and "medical expenses" (Complaint ¶s 17, 21).  The

plaintiff's ad damnum is $10,000,000 for her Jones Act and unseaworthiness claims.

ACL does not contest that on or about August 5, 2002 there was an incident on its

AMERICAN EAGLE involving Ms. Gilmore and then AMERICAN EAGLE Chef Michael

Romero.  Mr. Romero was immediately removed from the AMERICAN EAGLE and ultimately

plead guilty to sexual assault charges in Maine where he is currently incarcerated.

What is bitterly contested is the severity of the events of the night of August 5, 2002.

While it is admitted that the incident involved sexual advances by Mr. Romero, whether or

---

[1] Factual allegations herein are made under the penalties and pain of perjury.
[2] Margaret Gilmore is the married name of Margaret Jacobi who was an AMERICAN EAGLE crewmember on
August 5, 2002.

not an actual rape occurred is disputed and has not been established by any medical evidence.

Also the extent of Ms. Gilmore's continuing "anguish of mind" is very much disputed. Ms.

Gilmore had a long history of emotional issues prior to August 5, 2002.

ACL seeks plaintiff's medical records from the twenty-one (21) medical providers listed

in her answer to ACL interrogatory no. 1 and for plaintiff to be examined by Dr. Harold J.

Bursztajn. Plaintiff refuses to sign the necessary HIPAA Authorizations and seems to suggest

ACL is not entitled to a medical examination (plaintiff's counsel August 22, 2005 letter)(Bertram

E. Snyder (BES) Aff., ¶ 1)

## II.    ARGUMENT

FRCP 35 requires that the examinee's mental or physical condition must be at issue, and

that good cause must exist for a medical examination. Plaintiff's counsel's August 22, 2005

letter argues that "Ms. Gilmore's records of treatment for various medical and psychological

conditions are irrelevant to her claims of emotional harm resulting from the incident that

occurred on August 5, 2002 because Ms. Gilmore does not claim that she suffers from any

diagnosed medical or psychiatric disorder as a result of the alleged rape (BES Aff. ¶ 1). But Ms.

Gilmore asserts that she "has suffered pain of body and anguish of mind" in both Counts I and II

of her Complaint and her attorney's August 22, 2005 letter refers to psychiatric injuries including

nightmares, flashbacks, fear, fear to herself, fear of rape again, fear of men to fear of being alone.

These specifically alleged mental injuries affirmatively place in controversy a mental condition

sufficient to satisfy the "in controversy" prong of Rule 35.

Additionally, Dr. Bursztajn in his September 14, 2005 report (BES Aff. ¶ 1) establishes

the required FRCP 35 "good cause" for an independent medical examination. Dr. Bursztajn

proffers that the "good cause" for an independent medical examination in this case stems from

the need to ascertain with some level of certainty the causation of Ms. Gilmore's claimed symptoms that meets accepted professional standards of reliability for forensic psychiatric evaluation. Dr. Bursztajn asserts that the court must consider all of Ms. Gilmore's claimed symptoms, the potential misattribution of these claimed symptoms and their alleged cause in light of other possible causes that may emerge from a review of Ms. Gilmore's medical history and life history.

In *Schlagenhauf v. Holder*, 379 US 104, 119 (1964) the United States Supreme Court considered the construction of Rule 35 as it relates to the "in controversy" and "good cause" requirements in the context of a request for a physical examination in a personal injury case.

In its analysis, the Court asserted that "the movant must produce sufficient information" in order to meet the "in controversy" requirement. The court held that a plaintiff in a negligence action who asserts mental or physical injury … places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Additionally, the court noted that "there are situations where the pleadings alone are sufficient to meet these requirements." <u>Schlagenhauf</u> at 119.

The Court also stated: "[t]he Federal Rules of Civil Procedure should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations" the "good cause" and "in controversy" requirements of Rule 35. <u>Schlagenhauf</u> at 119. The court annunciated that the "in controversy" and "good cause" requirements of Rule 35:

> are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

In this case, ACL clearly sustains its burden.  In light of *Schlagenhauf*, Dr. Bursztajn's analysis of Plaintiff's Answers to Interrogatories, plaintiff's counsel August 22, 2005 letter and the case materials made available to him easily satisfy the "in controversy" requirement of Rule 35 and the necessity of an independent medical examination to evaluate the forensic causes and nature of the symptoms and neuropsychiatric impairments she claims.  Additionally, because Ms. Gilmore has pleaded that she has "suffered pain of body and anguish of mind" in Counts I an II (Jones Act Negligence and Unseaworthiness, respectively) of her Complaint, Ms. Gilmore has squarely placed her mental condition in controversy in this case.

Dr. Bursztajn discusses in detail the need for and reasoning supporting an independent medical examination of Ms. Gilmore.  In his analysis, Dr. Bursztajn references the August 22, 2005 letter from plaintiff's counsel wherein she argues that Ms. Gilmore's records of treatment for various medical and psychological conditions are irrelevant to her claims of emotional harm resulting from the incident that allegedly occurred on August 5, 2002 because Ms. Gilmore does not claim that she suffers from any diagnosed medical or psychiatric disorder as a result of the alleged rape.

This argument notwithstanding, Dr. Bursztajn asserts that a reliable forensic psychiatric evaluation "must include a determination of whether the symptoms Ms. Gilmore does claim as resulting from the rape (as listed in her attorney's letter e.g. "nightmares, flashbacks, fear, fear to herself…") may instead be symptoms of preexisting conditions, personality characteristics, side effects of the extensive array of psychotropic medications that she has listed in her answers to interrogatories that she had been and continues to be taking, faking, exaggerating, malingering, or misattribution and displacement of symptoms to a convenient focus of blame."

Dr. Bursztajn asserts that "causation cannot be assumed *a priori*. Causation of symptoms and impairments cannot be reliably evaluated in a vacuum, out of context of other developmental and life circumstances that affect a person's feelings, attitudes and behavior. An analysis of causation needs to consider the claimed symptoms and their alleged causes that may emerge from a review of the claimant's medical history and life history."

To perform a methodologically reliable analysis of the bearing these and similar considerations have on the merit of Ms. Gilmore's claims, Dr Bursztajn argues that an independent medical examination consisting of a comprehensive forensic neuropsychiatric evaluation will be required. He states that "the evaluation will include a Rule 35 forensic neuropsychiatric examination of Ms. Gilmore, consisting of a structured and unstructured interview and objective psychological testing, including observation and testing for faking, malingering, exaggerating, and misattribution of symptoms. To insure optimum validity, such an examination needs to be private, without the presence of third parties or recording devices. It will also be necessary to review all medical and other records relevant to resolution of the questions of causal attribution and misattribution raised above.

In requesting an independent medical examination, ACL must also adequately demonstrate the Rule's "good cause" requirement. The basic elements of the "good cause" requirement are adequately set out in the following case law.

In *Pozefsky v. Baxter Healthcare Corporation*, 194 FRD 438 (N.D.N.Y. 2002), the court considered a motion to compel the Plaintiff to undergo a psychiatric examination to determine the existence, nature and extent of her alleged severe and continuing emotional injury resulting from an operation. The court, in citing *Schlagenhauf*, found that even though the Plaintiff withdrew her claim for emotional injury resulting from the operation, the defendant maintained

that a psychiatric exam remained necessary because the Plaintiff's psychiatric condition could be the source for her alleged physiological medical problems.

The court found that the Plaintiff's mental condition was in controversy and that there was good cause for the examination given the possible nexus between the physical symptoms of which plaintiff complains and her alleged psychological disorders. The Court believed that these circumstances merited an examination under Rule 35.

*Eckman v. University of Rhode Island*, 160 FRD 431, (D.RI 1994) discussed the prerequisites for asserting "good cause" arising from an incident at a fraternity party. The plaintiff alleged that while attending the party, she was served alcoholic beverages and was sexually assaulted. Plaintiff stated that she suffered physical and mental injury and stated that she intended to prove this fact with testimony from at least two therapists. Plaintiff had provided defendants her medical records as well as the records of therapists and both therapists were deposed. Plaintiff argued that she need not submit to a mental examination when she supplied all necessary information to defendants concerning her mental injury.

The *Eckman* Court held that Rule 35 is to be construed liberally in favor of granting discovery. While plaintiff complied with the "broad and liberal" discovery rules, the Court could not find fault with the URI defendants for wanting to have their own expert examine the plaintiff. The court opined that "[t]he severity of plaintiff's emotional problems has been placed on this record and will play a central role in this case. ***This alone supplies the necessary "good cause" for a Rule 35(a) mental examination*** Eckman, supra at 433. The URI defendants obviously have substantial questions concerning the extent of plaintiff's emotional injuries and causation therefor. They should have an opportunity to explore these issues and "good cause" has been shown". Eckman, supra at 433-34.

The severity of and the cause of the plaintiff's emotional problems have been placed on the record and will play a central role in this case. Under *Eckman,* this consideration alone supplies the necessary "good cause" for a Rule 35(a) mental examination. Dr. Bursztajn asserts that the cause and extent of plaintiff's emotional injuries including her nightmares, flashbacks, fear, and fear to herself, need to be examined. Moreover, he states that "an evaluation must include a determination of whether the symptoms Ms. Gilmore does claim as resulting from the rape may instead be symptoms of preexisting conditions, personality characteristics … faking, exaggerating, malingering or misattribution and displacement of symptoms to a convenient focus of blame."

## III.    CONCLUSION

Because Ms. Gilmore's creditability, her claimed emotional injuries, and her past emotional issues are all major factual issues, and because ACL has convincingly established its need for an independent medical examination in compliance with FRCP 35 requirements, its motion should be allowed.

DEFENDANT
By its attorney,

September 29, 2005

_/s/ Bertram E. Snyder_
Bertram E. Snyder, BBO#471320
LOONEY & GROSSMAN, LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September 2005, I served the foregoing by first class mail, postage prepaid, to Carolyn Latti, Esq., Latti & Anderson LLP, 30-31 Union Wharf, Boston, MA 02109.

_/s/ Bertram E. Snyder_
Bertram E. Snyder

L:\1372\000\Pld\47

8