UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARGARET L. GILMORE )<br>    Plaintiff )<br> )<br>V. )<br> )<br>AMERICAN CRUISE LINES, INC. )<br>    Defendant )<br> ) | Civil Action<br><br>No. 04-12323-NG |

**PLAINTIFF'S MEMORANDUM IN LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO SIGN HIPAA AUTHORIZATIONS AND TO BE EXAMINED BY DEFENDANT'S PSYCHIATRIST**

**I.    INTRODUCTION**

The Defendant seeks to have the Plaintiff examined by a psychiatrist and seeks an order of this Court compelling her to sign medical authorizations with respect to all of her medical records from 2000 to the present. However, it should be noted that the Defendant's entire motion, except for one sentence, addressed only the Defendant's right to have the Plaintiff undergo an IME. Defendant failed to offer any argument or legal authority in support of its request for the Plaintiff's medical records. Further, Defendant violated Local Rule 37.1 by failing to even ask for an IME or to consult with Plaintiff's counsel as to whether she agreed to have the Plaintiff undergo an IME prior to filing the motion. Plaintiff's counsel has never objected to an IME of the Plaintiff, and, after receiving this motion, notified defense counsel of that fact. Despite the fact that the Plaintiff does not oppose an IME, and told the Defendant so, the Defendant has unjustifiably refused to withdraw its motion, has refused to amend or correct its Local Rule 37.1 statement, and has refused to deal with the true discovery dispute of whether

1

the Defendant is entitled to access to all of Plaintiff's medical records from 2000 to present, both psychological and non-psychological.

With respect to the issue of the Defendant's access to the Plaintiff's medical records, the Defendant's request is not reasonably calculated to lead to the discovery of admissible evidence and unduly invasive of plaintiff's privacy. Additionally, with respect to the Plaintiff's mental health records, case law clearly bars the Defendant from obtaining the Plaintiff's psychological, psychotherapy, and therapy records due to the psychotherapist-patient privilege, which has not been waived in this case. Accordingly, the Defendant is not entitled to the records, and its motion should be denied.

## II.   FACTS

### a.   Rape of Margaret Gilmore

On Margaret Gilmore's[1] first day of work as assistant hotel manager on the AMERICAN EAGLE,[2] she was raped by the vessel's chef, Michael Romero, when the vessel was in Boothbay Harbor, Maine. She had gone to bed early that night, and, before going to sleep, had locked her door and had taken two Seroquels in order to help her sleep. In the early hours of August 5, 2002, on two separate occasions, Romero used a master key given to him by crew members, and went into the Plaintiff's room and raped her. During the first attack, the Plaintiff woke up and found Romero[3] standing by his bed without clothing on. She realized that, although she had gone to bed with shorts on, she did not have them on at that time. Romero told the Plaintiff that they had just had sex. The Plaintiff kicked Romero out of her room and searched for the Captain

---

[1] At the time, Plaintiff's name was Margaret Jacobi.
[2] The AMERICAN EAGLE is a 142 foot long vessel that cruises the New England coast in the summer and the Caribbean Sea in the winter.
[3] Romero was intoxicated at the time and had been out drinking with other crew members on the vessel despite the fact that the Defendant had a policy that no crew member was to be intoxicated on the vessel. This was also not the first time that Romero or other crew members had been on the vessel intoxicated.

to tell him what had occurred. When she could not find the Captain, she returned to her cabin, locked her door for the second time and went back to sleep, planning to inform the Captain in the morning of what occurred.

At some point afterward, Romero reentered the Plaintiff's room with the master key. This time, there was a struggle. Romero grabbed the Plaintiff's head and hair, slammed her head against the wall, pinned both of her arms behind her back, and told her that she can have it the easy way or the hard way. She managed to push Romero off of her, escaped and ran to find the Captain to inform him what happened.

Several hours later, a rape test was performed at Miles Memorial Hospital in Damariscotta, Maine. A bruise was found on the Plaintiff's inner right thigh from the assault, and semen was found. Weeks after the rape, the Plaintiff learned that she was pregnant, and, until DNA testing was performed about four months later, she did not know whether Romero or her fiancée (now husband) was the father.

Romero was charged with gross sexual assault, two counts of aggravated criminal trespass, and two counts of assault. Romero pleaded guilty to unlawful sexual conduct and aggravated criminal trespass, and was sentenced to prison for a total of almost ten years. Despite Romero's plea, his ten year sentence, and the facts surrounding the rape, the Defendant, in its Motion and throughout this litigation, has consistently taken the position that Romero only made "sexual advances." *Exhibit A*.

    **b.**    **The Defendant failed to conduct a discovery conference regarding the matter of the IME request.**

The Defendant's Motion seeks 1) that the Plaintiff submit to an IME, and 2) that the Plaintiff provide HIPAA authorizations to the Defendant for all medical providers listed in her answer to Defendant Interrogatory No. 1. However, only one sentence out of the Defendant's

3

entire seven page motion dealt with the issue of HIPAA authorizations. The Defendant wrote only: "ACL seeks Plaintiff's medical records from the twenty-one (21) medical providers listed in her answer to ACL interrogatory No, 1…" Motion, p. 2. The Defendant cited no law and made no argument in support of this request. In fact, the relief sought in the Defendant's conclusion is only that the Court grant an IME of the Plaintiff. The lack of argument and research regarding the Defendant's alleged right to HIPAA authorizations causes an objective reader to strongly question the importance of the issue to the Defendant and the Defendant's belief in the strength of its own position.

The front page of Defendant's Motion contains an unsigned statement that states: "The parties have complied with Local Rule 37.1. Please see attached affidavit of Bertram E. Snyder, Esq., for letters with respect to the discovery dispute." The affidavit, signed by Mr. Snyder, referred to letters between counsel "as a result of discovery." However, the Defendant's Local Rule 37.1 statement is not true. The Defendant completely failed to comply with Local Rule 37.1 with respect to the issue of an IME.

Until receiving the motion, the Plaintiff was unaware that the Defendant ever wanted an IME of the Plaintiff, and was certainly unaware that there was a "discovery dispute" on this issue. At no time did the Defendant ever request in writing or orally an IME of the Plaintiff. *Exhibit B*, Affidavit of Carolyn M. Latti, Esq. Accordingly, there was no discovery conference. If the Defendant had ever asked for an IME prior to filing a motion, as required by the Local Rule, the Defendant would have learned that Plaintiff's counsel had always consented to an IME.

The only compliance with Local Rule 37.1 was with respect to the issue of Plaintiff's refusal to sign HIPAA authorizations. Over a period of a month and a half, the parties exchanged letters trying to resolve the issue, but were unable to do so. *See* August 15, 2005

letter from Mr. Snyder to Ms. Latti, *Exhibit C*; August 22, 2005 letter from Ms. Latti to Mr. Snyder, *Exhibit D*; September 9, 2005 letter from Mr. Snyder to Ms. Latti, *Exhibit E*, and September 14, 2005 letter (which Defendant failed to list in its affidavit), *Exhibit F*.

The day after receiving Defendant's Motion, Attorney Latti wrote Attorney Snyder informing him that he had misrepresented to the Court the issue whether there had been a discovery conference or even a discovery dispute on the issue of an IME of the Plaintiff. *Exhibit G*. Ms. Latti requested that Mr. Snyder withdraw the Motion and/or correct his misrepresentations to the Court, and that, if he did not take such action, the Plaintiff intended to file a Federal Rule 11 motion. Id.

Mr. Snyder and Ms. Latti spoke on October 5, 2005. During the discussion, Ms. Latti informed Mr. Snyder that not once was the issue of an IME ever brought up and that, if Mr. Snyder had discussed the issue with Ms. Latti, he would have learned that the Plaintiff had never opposed an IME. *Exhibit B*. Ms. Latti again requested that Mr. Snyder either amend or withdraw his motion. In a letter dated October 6, 2005 to Ms. Latti, Mr. Snyder refused to withdraw or amend the motion even though he "has no memory of a specific conversation with you concerning an IME." *Exhibit H*.

Mr. Snyder's October 6, 2005 letter is nothing more than an attempt to cover up his failure to conduct a Local Rule 37.1 conference. He wrote that counsel for the Plaintiff should have known that his reference to the phrase "expert medical testimony in his September 9, 2005" letter was equivalent to a request for an IME and that the Plaintiff has now made an "apparent concession to an IME." Id. This statement is disingenuous and insulting. First, when a party wants an IME, he/she will request it either orally or in writing. It is as simple as that and is the professional courtesy that occurs in this business. Second, a review of Exhibits C through F

5

reveals that the only issue discussed in the letters was Plaintiff's refusal to sign HIPAA authorizations. Not once in any of the letters did Defendant ever request an IME of the Plaintiff or make any reference to an IME. Third, since Plaintiff's counsel had always consented to an IME, there cannot be any "apparent concession" by Plaintiff to the IME. Defendant is now trying to justify its own failure to request an IME and to follow the Local Rules.

On October 7, 2005, Ms. Latti wrote another letter to Mr. Snyder requesting that he withdraw his motion, correct his misrepresentations to the Court regarding Plaintiff's position of an IME and its Local Rule 37.1 discovery conference, and file a motion dealing with the real dispute of the HIPAA authorizations with proper authority and argument. *Exhibit I*. He refused. *Exhibit J*.

Thus, even though there is no current dispute and there never has been a dispute regarding an IME of the Plaintiff, Defendant's Motion is still before the Court and this Court must decide the real dispute, Defendant's Motion to Compel HIPAA authorizations of the Plaintiff, even though the Defendant failed to provide the Court with any legitimate argument in support of its request and failed to provide any case law in support of its position.

    **c.**    **The HIPAA dispute and the production of medical records.**

On August 15, 2005, Defendant requested that the Plaintiff sign HIPAA authorizations for all of her health care providers from 2000 to the present, including her therapists, psychologists, general practioners, obstetricians and gynecologists on issues of treatment for gynecological/obstetrical issues, pancreatitis, stomach problems, bulimia, and alcohol abuse. The Plaintiff objected to providing these authorizations, except for Dr. Donald DeBlock, Dr. Naomi Rucker and Miles Memorial Hospital, on the grounds that the other records were not

reasonably calculated to lead to the discovery of admissible evidence and that the request was invasive, intrusive and contrary to her privacy. *Exhibit D*.

The Plaintiff did provide records relating to the rape from Dr. DeBlock, Dr. Rucker and Miles Memorial Hospital. Dr. DeBlock was a psychologist from Wenham, Massachusetts, with whom the Plaintiff treated both before and after the rape. The Plaintiff provided all of Dr. DeBlock's records from 1998 to the present. The Plaintiff also saw Dr. Naomi Rucker, of Savannah, Georgia, several times after the rape. Miles Memorial Hospital in Maine performed the rape test on the Plaintiff.

        **d.**      **The Plaintiff's position at trial.**

At trial, the Plaintiff will not be calling an expert witness and/or doctor to testify that the Plaintiff suffers from a mental illness and/or psychotic disorder such as depression, post traumatic stress disorder as a result of the rape. The Plaintiff will not call either Dr. DeBlock, her treating psychologist, or Dr. Rucker. Nor will the Plaintiff attempt to introduce any of her medical records.[4] The Plaintiff's testimony at trial will focus on how the rape has affected her, her emotional injuries, distress and the negative emotions she has had as a result of the rape. The Plaintiff will testify as how she experiences nightmares, flashbacks, fear of harm to herself, fear of rape again, fear of the rapist Romero, fear of men, fear of being alone, and her terrible thoughts of what is was like not knowing whether her fiancée or the rapist was the father of the baby she was carrying. The Plaintiff will not claim that any of her past medical conditions were aggravated by the rape and will not claim that she suffered physical injuries as a result of the rape. The Plaintiff is not claiming lost of past or future lost wages as a result of the rape and will not proceed with her maintenance and cure claims.

**III.     THE DEFENDANT'S MOTION FOR AN IME SHOULD BE DENIED AS MOOT.**

For the reasons set forth above, the Defendant's request for an IME should be denied as moot. The Plaintiff has agreed to an IME. The Plaintiff has always agreed to an IME. If the Defendant had followed this District's Local Rules, it would have avoided this waste of time, energy and resources.

**IV.    THE DEFENDANT'S CASE LAW AND ARGUMENT REGARDING ITS RIGHT TO AN IME IS IRRELEVANT TO THE ISSUE OF WHETHER IT IS ENTITLED TO HIPAA AUTHORIZATIONS.**

The Defendant's entire motion dealt with the issue of its right to an IME. Because the Plaintiff has never opposed an IME, the motion is moot except for the one sentence in the motion requesting the Plaintiff's sign HIPAA authorizations for her doctors from 2000 to present. However, in his October 7, 2005 letter, *Exhibit J*, Mr. Snyder is adamant that the cases referenced in the motion are "supportive of the production of records I need." *Exhibit J.*

Not one of the cases cited by the Defendant dealt with the issue of whether the Defendant is entitled to the Plaintiff's medical records or HIPAA authorizations. The cases addressed only whether the Defendant was entitled to an IME. Only the case of Eckman v. University of Rhode Island, et al., 160 F.R.D. 431 (D.R.I. 1994), even mentioned medical records. However, given that the plaintiff in Eckman argued that, because the medical records were submitted to the defendants in that case and because the plaintiff's therapist had been deposed, an IME was not necessary, that case is irrelevant to the matter at issue in this case. Pozefsky v. Baxter Healthcare Corp., 194 F.R.D. 438 (N.D.N.Y. 2000), and Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234 (1964), do not even mention medical records or HIPAA authorizations. The cases are also

---

[4] The Plaintiff may seek to introduce records from Miles Memorial Hospital only to show that a rape test was performed and the results of the test. This will depend on whether the Defendant continues to maintain its unreasonable denial that a rape occurred.

immaterial for this Court's determination of whether Plaintiff can be compelled to sign HIPAA authorizations.

The Plaintiff anticipates that the Defendant will argue in its reply brief that its access to the Plaintiff's medical records and an IME go hand and hand - e.g., if the Defendant is entitled to an IME, it is entitled to access the Plaintiff's medical records.[5] This argument is without merit. The standard for obtaining an IME, as set forth by Defendant in its brief, is establishing good cause. However, the standard for obtaining a plaintiff's medical records is relevance and privacy interests, as well as overcoming any applicable privileges. These two standards do not go hand and hand; they are separate issues. The Plaintiff's research has not revealed any case that held that a defendant was entitled to medical records so that an IME could be performed or that obtaining the plaintiff's medical records were a prerequisite for a defendant having an IME. Accordingly, whether an IME is done is irrelevant to the issue of whether the Defendant can obtain the Plaintiff's medical records.

**V.    THE DEFENDANT IS NOT ENTITLED TO HIPPAA AUTHORIZATIONS TO RELEASE THE PLAINTIFF'S MEDICAL RECORDS FROM 2000 TO THE PRESENT.**

    **a.    Mental health records**

The Defendant should be denied unfettered access to the Plaintiff's medical records and particularly her mental health records. In 1996, the United States Supreme Court in <u>Jaffee v. Redmond</u>, 518 U.S. 1, 12-18, 116 S.Ct. 1923 (1996), recognized a psychotherapist privilege under federal common law that applied to confidential communications made between licensed psychiatrists, psychologists and social workers and their patients. The Supreme Court left it to the lower courts to determine if and when the privilege was waived. <u>Id.</u>

9

In <u>Vanderbilt v. Town of Chilmark, Goff, Hancock and Preston</u>, 174 F.R.D. 225 (D. Mass. 1997), <u>Booker v. City of Boston</u>, 1999 U.S. Dist. Lexis 14402 (D. Mass. 1999), and <u>Sorenson v. H.R. Block</u>, 197 F.R.D. 199 (D. Mass. 2000), this District has routinely held that the psychotherapist privilege is only waived when the party asserting the privilege makes a claim for emotional distress far in excess of the "garden variety" type of pain and suffering.  In all three of these cases in which mental health records were sought, this District rejected the defendant's argument that, because the Plaintiff sought damages for emotional distress, the plaintiff waived the psychotherapist-patient privilege.  <u>Vanderbilt</u>, <u>supra</u> at 228; <u>Booker</u>, <u>supra</u> at 2.  In <u>Vanderbilt</u>, <u>Booker</u>, and <u>Sorenson</u>, Judges Tauro, Lasker and Collings respectively held that a plaintiff who claims emotional distress or emotional injuries does not waive the psychotherapist-patient privilege as long as she does not offer any expert testimony or testimony from her psychotherapists, does not introduce medical records of treatment, and does not introduce the substance of any communications between the plaintiff and the doctors.  <u>Vanderbilt</u>, <u>supra</u> at 228, 230; <u>Booker</u>, <u>supra</u> at 2-4; <u>Sorenson</u>, <u>supra</u> at 204.

Magistrate Judge Collings wrote that claims of great bodily harm, mental anguish, personal indignity, emotional pain, anxiety embarrassment and anxiety, severe emotional distress, including physical and mental suffering, shame, humiliation are not the type of "psychic or psychological injury which would trigger a waiver" of the privilege.  <u>Sorenson</u>, <u>supra</u> at 203-204.  Simply put, a plaintiff's mental condition is not put at issue by "making a 'garden variety' claim of emotional distress."  <u>Sabree v. United Brotherhood of Carpenters & Joiners of America, Local No. 33</u>, 126 F.R.D. 422, 426 (D.Mass. 1989).  Claims for emotional injuries that "arise as a fair consequence of any underlying tort" are garden variety and do not waive the privilege.

---

[5] Because the Defendant will presumably present its cases and argument regarding its right to access the Plaintiff's medical records for the first time in its reply brief, the Plaintiff will not have a chance to respond.  Accordingly, the

Morrisette v. Kennebec County, 2001 U.S. Dist. Lexis 13309 (D. Me. 2001).  Waiver of the privilege occurs when a plaintiff's emotional health is "in issue" and there is a claim of psychic injury or psychiatric disorder resulting from the rape.  Sabree, supra at 426.

  Under Vanderbilt, Booker and Sorenson, the Defendant is not entitled to the records from the Plaintiff's psychiatrist, psychologist, or therapist.  As in Booker and Sorenson, Plaintiff does not plan to call a psychiatrist, psychologist, or any other expert to testify as to any of Plaintiff's medical conditions.  Nor will Plaintiff introduce any medical records to support any claim of emotional distress.  She does not intend to testify as to her treatment with any of her therapists, psychologists or psychiatrists.  She has only asserted "garden variety" claims of emotional distress that do not waive the privilege.  Her anticipated testimony as to her nightmares, fear of being raped again, fear of Romero, and the emotional issues regarding not knowing the identity of the father of her child are all emotional injuries that "arise as a fair consequence of any underlying tort."  Morrisette, supra.  She is not claiming any psychic injury or psychiatric disorder resulting from the rape, and has not waived the psychotherapist-patient privilege in this action.[6]

  The Defendant's argument that it needs these records in order to assess the Plaintiff's credibility and to cross examine her does not meet the standard for production of the records and waiver of the privilege.  Vanderbilt specifically held that the mere fact that this evidence may be useful to the fact finder does not compel disclosure based on Jaffee.  Vanderbilt, supra at 229.  Further, in Booker, Judge Lasker specifically rejected the defendant's argument that the fact that the privileged information may be helpful to cross examination does not compel disclosure of the records.  Booker, supra at 4-5.

---

Plaintiff must anticipate and address Defendant's anticipated arguments at this time.

In this case, the Defendant already has Dr. DeBlock's and Dr. Rucker's records and can use information obtained from those records, from its own investigation, from the deposition and trial testimony of the Plaintiff, and from other witnesses to cross examine the Plaintiff and attack her credibility.  Issues of cross-examination and credibility of the Plaintiff are not sufficient to eradicate the privilege created by the Supreme Court and followed in this District in Vanderbilt, Booker, and Sorenson.

Further, based on the claims that the Plaintiff will actually present, the records from her psychiatrists, psychologists and social workers regarding her bulimia and alcohol abuse are not relevant to the case.

Thus, under current case law, this Court should deny Defendant's request to compel HIPAA authorizations of the Plaintiff's psychiatrists, psychologists, therapists and social workers.

      **b.**      **non-mental health records.**

The Defendant's request for HIPAA authorizations for all of the Plaintiff's medical records, including her non-mental health records, should be denied.  Judge Lasker in Booker rejected the defendant's request for all medical records of the plaintiff on the grounds that the records were not relevant to the issues of the case where there was no claim for physical injury. Booker, supra at 5.  In this case, the Plaintiff does not claim any physical injury as a result of the rape and does not claim an aggravation of any prior physical condition as a result of the rape. However, the Defendant wants complete access to the records from the Plaintiff's primary care physician, her obstetrician, her gynecologists, and the doctors that treated her for such conditions as pancreatitis, stomach problems, bulimia to alcohol abuse.  These records are irrelevant to this

---

[6] However, the magnitude of these claims for emotional distress must not be minimized as it cannot be disputed that the underlying tort, a rape, is probably the most severe injury that a woman can experience.

case and are nothing more than a fishing expedition for the Defendant. The Plaintiff did not do anything to cause the rape. It was her first day of work and she was sleeping in her room when Romero broke into her room. The Defendant has not claimed that the Plaintiff was contributorily negligent, and is apparently trying to defend this case by using the Plaintiff's past medical history and problems with bulimia and alcohol to place her in a bad light. It is regrettable that the Plaintiff, who was unable to fend off the Defendant's co-employee who raped her, now must try to fend off the Defendant from intruding and invading on her past and present medical history. She was sleeping and did nothing wrong that night, yet now, because of the rape, her entire medical history, according to the Defendant, is relevant. The Plaintiff's past and present medical condition is not relevant to any discoverable information based on the narrow issues that will be heard at trial. Because the Plaintiff is not claiming any physical injuries or aggravations of any past or present conditions, her medical records are irrelevant. She did provide the Defendant for discovery the medical records that are reasonably calculated to lead to the discovery of admissible evidence, i.e., Miles Memorial Hospital where the rape test was performed, Dr. DeBlock, her treating psychologist since 1998, and her treating psychiatrist in Georgia, Dr. Naomi Rucker. The Defendant does not need any more records than what was provided. As indicated by Defendant's records review IME report of Dr. Bursztajn, contained as an exhibit to the Defendant's motion, the information contained in these records provides more than enough potential cross examination material and discoverable information. The Plaintiff's privacy interests in her medical records far outweigh any claim by Defendant for its need of records. Consistent with <u>Booker</u>, the Plaintiff's non-psychiatric medical records are not relevant to this case and Defendant's request for HIPAA authorizations should be denied.

V.  **CONCLUSION**

Plaintiff has always consented to an IME of the Plaintiff. There is no issue for the Court to decide regarding an IME. With respect to the Defendant's request for the records from the Plaintiff's psychiatrists, psychologists and social workers, these records are protected by the psychotherapist privilege and not relevant to this case. Accordingly, this Court should deny Defendant's Motion to Compel Plaintiff to Sign HIPAA authorizations.

                                                   Respectfully submitted for the
                                                   Plaintiff, Margaret L. Gilmore,
                                                   by her attorney,

                                                   /s/ Carolyn M. Latti
                                                 Carolyn M. Latti, BBO 567394
                                                 David F. Anderson, BBO 560994
                                                 Latti & Anderson LLP
                                                 30-31 Union Wharf
                                                 Boston, MA 02109
                                                 (617) 523-1000

Dated: October 13, 2005

## CERTIFICATE OF SERVICE

     I hereby certify that on October 13, 2005, I electronically filed Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Plaintiff to Sign HIPAA authorizations and to Be Examined by Defendant's Psychiatrist with the Clerk of the Court using CM/ECF system which will send notification of such filing(s) to the following:

Bertram E. Snyder, Esquire
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

                                                 Respectfully submitted for the
                                                 the Plaintiff,

                                                 /s/Carolyn M. Latti

Carolyn M. Latti
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
617-523-1000
clatti@lattianderson.com

15