UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET L. GILMORE )<br>　　Plaintiff　　　　　　　　　　) <br>　　　　　　　　　　　　　　　　　) <br>v.　　　　　　　　　　　　　　　) <br>　　　　　　　　　　　　　　　　　) <br>AMERICAN CRUISE LINES, INC.　) <br>　　Defendant　　　　　　　　　) | Civil Action No.  04-12323-PJB |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

I.  **FACTS**

Consistent with virtually every filing by plaintiff's counsel to date, the events of August 5, 2002 giving rise to the instant litigation are described as a rape when in fact there is no evidence to date as to what actually occurred. The severity of the incident remains to be determined. Neither the plaintiff, Mr. Romero, any doctor, any eyewitness or any law enforcement officer has been deposed. Defendant has never denied there was an incident. Results from a so called "rape kit test" were inconclusive. (Exhibit A, Transcript of Romero sentencing p21)  There was no evidence of any struggle (Exhibit A, p22). Mr. Romero has no recollection of what occurred (Exhibit A, p.22)  There was no trial. Mr. Romero entered a guilty plea as a result of a plea bargain. Plaintiff says Mr. Romero was sentenced to almost 10 years confinement (memo p.1) but neglects to say all but 3 ½ years was suspended (Exhibit B).

Defendant has no video of any statement by Mr. Romero and has so advised plaintiff. See affidavits of Brian G. Morrissey and Bertram E. Snyder, Esq. submitted herewith.

Defendant obtained a transcript of Mr. Romero's videotape through the efforts of its own investigation. Defendant has offered to provide a copy of the transcript if plaintiff paid half the costs it incurred in obtaining the transcript.

In its memorandum of law in support of its motion to compel a copy of the transcript, plaintiff offers no legal support nor does it say the sheriff's office will not provide her a copy of the transcript. Plaintiff could have obtained the transcript from the appropriate government authority as defendant did. Plaintiff wants defendant to do its investigation. Mr. Romero was not an employee of the defendant when he gave the statement. Defendant had no control over him at the time. Defendant was in no way involved in obtaining the statement.

Plaintiff in its argument totally ignores the trial preparation limitation provision of the Federal Rules of Civil Procedure (FRCP 26(b)(3). While the rule provides that a party "may obtain discovery" of documents, the rule does not require "all" documents obtained by a party to be produced to the opposing party.

Rule 26(b)(3) governs the instant dispute. It allows under well established criteria for the production of trial preparation materials. Plaintiff must show that it is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." In the case at bar, the plaintiff can get the identical material by simply paying a modest fee.

Rule 26(c)(2) states that "the discovery may be had only on specified terms and conditions". A "court may order the party seeking discovery to pay the expenses caused thereby." 8 Wright, Miller, Marcus (hereinafter "Wright"), Federal Practice and Procedures, §2038 p.505 (1994 cd) citing Curric v. Moore-McCormick Lines, Inc., 23 FRD 660 (D.Mass 1959); American Standard Inc. v. Bendix Corp., 71 FRD 443, 448 (W.D.Mo. 1976); Reeves v. Pennsylvania R. Co., 80 F.Supp 107 (D.Del. 1948).

Defendant's request in the instant case that plaintiff share the expense of obtaining the transcript is based on solid precedent. Rather than been obstructive, it simply seeks to compel plaintiff to share the expense of obtaining a document equally available to the plaintiff.

As to plaintiff's request for crew lists from the AMERICAN EAGLE from January 1, 2002 to the date of the incident, August 5, 2002 (Plaintiff's Memo, pp 5-7), plaintiff has had the August 5, 2002 crew list since on or about March 9, 2005 (Exhibit C). Excluding the plaintiff and Mr. Romero, there were sixteen other crew on board the AMERICAN EAGLE on August 5, 2002. To date, plaintiff has taken the deposition of one person on board, Paul Taiclet[1]. Plaintiff has stated it has tape recorded statements from seven crewmembers (Exhibit D). Based on its deposition examination of defendant's president, Charles Robertson, it already has evidence of a number of alleged misdeeds by Mr. Romero including sexual comments, harassing crew members, flirtations with women crew, sexual talk with women crew, offensive to women crew (Exhibit E). There were about 74 different crew members on the AMERICAN EAGLE in 2002 through and including the week of August 3, 2002. Defendant has produced Mr. Romero's personnel folder and the deposition testimony of its president, assistant vice president and Paul Taiclet and no one has indicated any knowledge of any past history of sexual misdeeds on the part of Mr. Romero.

This Court pursuant to FRCP 26(c)(1) has complete control over discovery including the power to prevent abuse of the discovery process. See generally, 8 Wright §2036 pp 487-88. It is within the discretion of the court to consider what "restrictions may be necessary in a particular case, Wright, supra." Discovery has limits…the limits grow more formidable as the showing of need decreases. Wright supra at 491 n.8. The need for the discovery sought is clearly a major

---

[1] Plaintiff has also noticed the deposition of Captain Andrew Howes.

factor in considering a discovery limitation. Wright, §2037, 9.792 n.9. There must be a probable benefit. Cox v. Fennelly, 40 FRD 1, (SDNY 1966); Wright §2037 supra.

Cumulative discovery is not a given or a right. Until the plaintiff establishes a need for the names of former AMERICAN EAGLE crewmembers, its request should be denied. At the very least, plaintiff should be required first to depose the crewmembers on the AMERICAN EAGLE on August 5, 2002, whose names and statements she has long had.

For the foregoing reasons, plaintiff's motion to compel should be denied.

DEFENDANT<br>
By its attorney,

October 28, 2005

/s/ Bertram E. Snyder  
Bertram E. Snyder, BBO#471320  
LOONEY & GROSSMAN, LLP  
101 Arch Street  
Boston, MA 02110  
(617) 951-2800

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October 2005, I served the foregoing by email and first class mail, postage prepaid, to Carolyn Latti, Esq., Latti & Anderson LLP, 30-31 Union Wharf, Boston, MA 02109.

/s/ Bertram E. Snyder  
Bertram E. Snyder

EXHIBIT A

STATE OF MAINE

LINCOLN, ss.

SUPERIOR COURT
Criminal Action
Docket No.
CR-02-108

STATE OF MAINE, )
)
)
Plaintiff, )
)
-vs- )
)
MICHAEL A. ROMERO, )
)
Defendant. )
)

COPY

TRANSCRIPT OF PROCEEDINGS
Rule 11 and Sentencing

Before:  Honorable S. Kirk Studstrup,
Justice Of The Superior Court

Lincoln County Courthouse
Wiscasset, Maine

June 30, 2003

APPEARANCES:

For Plaintiff:  Donald Lawson-Stopps, ADA.

For Defendant:  Robert J. Ruffner, Esq.

Kimberly McCulloch
Official Court Reporter

**18**

1  Ben Rosenblatt, Paul Taiclet and others,
2  there was some sexual joking during that
3  luncheon, and later that evening
4  Mr. Taiclet would testify that the
5  defendant indicated that he had sexual
6  interest in Miss Jacobi.
7      While Miss Jacobi was performing her
8  duties in terms of running the bingo Ben
9  Rosenblatt -- excuse me, not him, Paul
10 Taiclet, the defendant and some others
11 went to shore, did quite a bit of drinking
12 and returned to the ship sometime around
13 midnight.
14     Ben Rosenblatt would testify that the
15 defendant came to his quarters, I believe
16 Mr. Rosenblatt was the purser or something
17 to do with maintenance, and he asked him
18 -- the defendant asked Mr. Rosenblatt for
19 a key which would be a master key to open
20 any doors. He was given that key,
21 according to Mr. Rosenblatt he returned
22 the key sometime later and then sometime
23 shortly after that he came back and took
24 the key again and did not return it.
25     Miss Jacobi would testify that she was

**19**

1  awakened sometime after midnight with the
2  defendant on top of her, groping her,
3  alleging to have been sexually active with
4  her. She screamed, tried to get the
5  defendant off of her, and she noticed that
6  her clothing was not the same, what she
7  had on was not the same as when she went
8  to bed in terms of her lower underwear.
9  She had taken a sleeping pill prior to
10 going to bed because of the anxiety and
11 the concern of not being able to sleep
12 well that night, she was groggy because of
13 the medication. The light of the
14 television indicated to her that she was
15 able to recognize the defendant.
16     She managed to get up, put on a pair
17 of shorts and ushered the defendant out of
18 her room and into his, which was right
19 next door. Being a ship these are very
20 small quarters, the distance we are
21 talking about is quite small.
22     She went back to her room after
23 looking for the captain but being unable
24 to find him went back to sleep and woke up
25 sometime later, again with the defendant

**20**

1  in her room, grabbing her, attempting to
2  have sex. He grabbed her, flipped her
3  over, took her arms holding them behind
4  her back, smashed her head into the wall,
5  and she could tell that the defendant had
6  nothing on his lower half of his body and
7  that he was attempting to insert his penis
8  either into her vagina or into her anus.
9      Kathryn Swords would testify that the
10 first time she -- that she walked by the
11 door on her rounds as the duty officer and
12 heard Margaret Jacobi yelling, "No, no.
13 Get off of me." She then went to look for
14 the captain, the captain came back and
15 noticed that Miss Jacobi was putting the
16 defendant into his room. I don't believe
17 he made any contact at that time.
18     During the second incident Miss Swords
19 came by again and heard screaming -- I am
20 not sure that it was actually screaming,
21 but heard the commotion that was going on
22 and heard again Margaret saying, "No, no."
23 She heard Margaret -- she heard the
24 defendant say, "You can have it the hard
25 way or the easy way." She then went and

**21**

1  got the captain, the captain came back and
2  did make contact with the defendant. He
3  spoke with the defendant about what was
4  going on, the defendant claims to not
5  remember.
6      The police were notified about the
7  incidents and the defendant was removed
8  from the ship. Margaret Jacobi was taken
9  after officers arrived on the scene to
10 Miles Memorial Hospital where she stayed
11 for some time and a rape kit was done at
12 that time. I do believe that semen was
13 discovered during the rape kit, however,
14 there was not sufficient semen available
15 to get an accurate DNA match with the
16 defendant.
17     That is the essence of the State's
18 case, your Honor, should it go to trial.
19     THE COURT: Mr. Ruffner, has all that
20 information been provided to you through
21 discovery or otherwise?
22     MR. RUFFNER: Your Honor, that
23 information or a close characterization of
24 it has been provided in discovery. I
25 would -- may I comment on it at this

### 22

```
09:07:54  1   point?
09:07:54  2        THE COURT: Certainly.
09:07:58  3        MR. RUFFNER: The -- it was indicated
09:07:58  4   that Mr. Romero indicated that he had no
09:08:00  5   recollection of what happened, that is
09:08:04  6   what he told the police officers when he
09:08:04  7   was interviewed several times. There's
09:08:08  8   evidence that he was -- had consumed quite
09:08:10  9   a bit of alcohol that evening and the --
09:08:16 10   one of the issues in this case was or a
09:08:22 11   nonissue in this case would have been
09:08:24 12   voluntary intoxication since that is not a
09:08:26 13   defense to the charges in the indictment.
09:08:34 14        The physical evidence from the medical
09:08:38 15   reports would -- was -- gave no -- there
09:08:44 16   was no evidence of any struggle or any
09:08:46 17   injury to Miss Jacobi other than there was
09:08:48 18   one bruise that we had not seen pictures
09:08:56 19   of on the inner thigh but other than that
09:08:58 20   there's no injury to the face or any other
09:09:00 21   part of her body, and that at least was
09:09:06 22   put in the discovery.
09:09:08 23        In addition the medication that
09:09:14 24   Miss Jacobi was on would have in her own
09:09:18 25   words sort of -- it does knock her out so
```

### 23

```
09:09:22  1   there would be some question if this had
09:09:24  2   gone to trial as to -- and this is by way
09:09:26  3   of explaining the plea agreement, your
09:09:28  4   Honor --
09:09:28  5        THE COURT: I am sorry?
09:09:28  6        MR. RUFFNER: This is by way of
09:09:30  7   explanation of whether the Court will
09:09:32  8   accept the plea or not --
09:09:32  9        THE COURT: Okay.
09:09:32 10        MR. RUFFNER: -- as to what she would
09:09:34 11   have been in a position to remember and
09:09:38 12   how reliable it would have been after
09:09:40 13   cross examination.
09:09:42 14        The defendant was taken off of the
09:09:50 15   ship and was questioned and, as I had
09:09:52 16   already indicated, he indicated that he
09:09:56 17   doesn't know and did -- did indicate that
09:09:58 18   he has no recollection of what happened.
09:10:00 19   This is not an Alford plea, however, that
09:10:02 20   position hasn't changed and he is not --
09:10:06 21   that is still his limited recollection
09:10:10 22   today.
09:10:12 23        THE COURT: Go ahead.
09:10:14 24        MR. RUFFNER: In terms of the -- what
09:10:18 25   is in the police reports and in the other
```

### 24

```
09:10:22  1   evidence provided it would provide the
09:10:24  2   ability for a jury to find him guilty of
09:10:30  3   the charges in the original indictment and
09:10:32  4   -- of the charges in the amended or in the
09:10:34  5   information and in the amended indictment,
09:10:36  6   your Honor.
09:10:38  7        THE COURT: So you are satisfied that
09:10:40  8   if the jury believed the evidence that the
09:10:42  9   State says it's prepared to show that they
09:10:44 10   could prove the elements of the offense,
09:10:48 11   correct?
09:10:48 12        MR. RUFFNER: If they agree with the
09:10:50 13   evidence they could agree with the
09:10:54 14   elements.
09:10:54 15        THE COURT: Do you believe this plea
09:10:56 16   is in your client's best interest?
09:10:58 17        MR. RUFFNER: Yes.
09:10:58 18        THE COURT: Mr. Romero, you heard
09:11:00 19   Mr. Lawson-Stopps summary of what the
09:11:02 20   State's evidence would be. Can you think
09:11:04 21   of any reason why the State would not be
09:11:06 22   able to present that evidence at trial?
09:11:10 23        THE DEFENDANT: No, sir.
09:11:10 24        THE COURT: Do you feel this plea is
09:11:12 25   in your best interest?
```

### 25

```
09:11:14  1        THE DEFENDANT: Yes, sir.
09:11:22  2        THE COURT: What is going to be
09:11:22  3   recommended to the Court?
09:11:24  4        MR. LAWSON-STOPPS: Your Honor, the
09:11:24  5   recommendation is going to be consecutive
09:11:26  6   sentences on all three felonies, the first
09:11:28  7   unlawful sexual contact the State would be
09:11:30  8   recommending three and a half years
09:11:32  9   straight time without probation, second,
09:11:36 10   the State would recommend on the
09:11:38 11   aggravated criminal trespass four and a
09:11:40 12   half years all suspended with four years
09:11:42 13   of probation --
09:11:44 14        THE COURT: I am sorry, go over that
09:11:44 15   again.
09:11:46 16        MR. LAWSON-STOPPS: Four and a half
09:11:46 17   years all suspended with four years of
09:11:50 18   probation, consecutive to that four years,
09:11:52 19   again all suspended with two years
09:11:56 20   probation. The probation special
09:11:58 21   conditions would be clearly no contact
09:12:00 22   with the victim, sex offender treatment to
09:12:04 23   the satisfaction of his probation officer,
09:12:06 24   up to $4,000.00 in restitution, this would
09:12:10 25   also include a 10 year sex offender
```

**STATE OF MAINE**
[X] SUPERIOR COURT   [ ] DISTRICT COURT   **JUDGMENT AND COMMITMENT**

| Docket No. CR-02-108 | County/Location: Lincoln County Superior | Date: 6-30-03 | DOB: 09-13-1969 |

State of Maine v. Defendant's Name: **Michael A. Romero**
Residence: 4103 Palmetto Place, Fort Mill, SC 29708

Offense(s) charged:
1. Gross Sexual Assault T.17-A M.R.S.A. §253(1)(A) Class "A"
2. Agg. CR Trespass T.17-A M.R.S.A. §402-A(1)(A) Class "C"
3. Agg. CR Trespass T.17-A M.R.S.A. §402-A(1)(A) Class "C"
4. Assault T.17-A M.R.S.A. §207(1) Class "D"
5. Assault T.17-A M.R.S.A. §207(1) Class "D"
6. Unlawful Sexual Contact T.170A §255(1)(A),(3) Class "C" (Information)

Charged by: [X] indictment  [ ] information  [ ] complaint

Plea(s): [X] Guilty  [ ] Nolo  [ ] Not Guilty  Cts. 2, 3 & 6
Date of Violation(s): 08-05-2002

Offense(s) convicted:
2. Agg. CR Trespass T.17-A M.R.S.A. §402-A(1)(A) Class "C"
3. Agg. CR Trespass T.17-A M.R.S.A. §402-A(1)(A) Class "C"
6. Unlawful Sexual Contact T.17-A §255(1)(A),(3) Class "C"

Convicted on: [X] plea  [ ] jury verdict  [ ] court finding

IT IS ADJUDGED THAT THE DEFENDANT IS GUILTY OF THE OFFENSES AS SHOWN ABOVE AND CONVICTED.

[X] IT IS ADJUDGED THAT THE DEFENDANT BE HEREBY COMMITTED TO THE SHERIFF OF THE WITHIN NAMED COUNTY OR HIS AUTHORIZED REPRESENTATIVE WHO SHALL WITHOUT NEEDLESS DELAY REMOVE THE DEFENDANT TO:

[X] The custody of the Commissioner of the Department of Corrections, at a facility designated by the Commissioner, to be punished by imprisonment for a term of Ct. 6: 3½ years
Ct. 2: 4½ yrs. consec. Ct 6
Ct. 3: 4 yrs. consec Cts 6 & 2

[ ] The County jail to be punished by imprisonment for a term of _____

[ ] This sentence to be served (consecutively to) (concurrently with) _____

[ ] Execution stayed to on or before: _____ at _____ (a.m.) (p.m.)

[X] IT IS ORDERED THAT ALL (BUT) Cts 2 & 3 OF THE SENTENCE (AS IT RELATES TO CONFINEMENT) (AS IT RELATES TO THE _____) BE SUSPENDED AND THE DEFENDANT BE PLACED ON A PERIOD OF PROBATION FOR A TERM OF Ct 2: 4 yrs. Ct 3: 2 yrs. (YEARS) (MONTHS) consec UPON CONDITIONS ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN. SAID PROBATION TO COMMENCE (_____) (UPON COMPLETION OF THE UNSUSPENDED TERM OF IMPRISONMENT).
THE DEFENDANT SHALL SERVE THE INITIAL PORTION OF THE FOREGOING SENTENCE AT _____

[ ] The final _____ month(s) of the unsuspended portion of the term of imprisonment is to be served with intensive supervision under conditions separately specified and incorporated herein.

[X] IT IS ORDERED THAT THE DEFENDANT, HAVING BEEN CONVICTED AS A [X] SEX OFFENDER or [ ] SEXUALLY VIOLENT PREDATOR, SATISFY ALL REQUIREMENTS IN THE SEX OFFENDER REGISTRATION & NOTIFICATION ACT. (34-A MRSA Ch. 15) THE DEFENDANT MUST SUBMIT TO THE TAKING OF FINGERPRINTS AND A PHOTOGRAPH AS SPECIFIED IN THE NOTICE OF DUTY TO REGISTER.

[ ] IT IS ORDERED THAT THE DEFENDANT FORFEIT AND PAY THE SUM OF $_____ AS A FINE TO THE CLERK OF THE COURT, PLUS APPLICABLE SURCHARGES AND ASSESSMENTS OF:
[ ] 10% SURCHARGE  [ ] 12% SURCHARGE (Eff. 7/4/96)  [ ] 14% SURCHARGE (Eff.9/18/99) (4 M.R.S.A. § 1057)
[ ] $30.00 SURCHARGE  [ ] $125.00 SURCHARGE (29 M.R.S.A. § 1312-B(5), 29-A M.R.S.A. § 2411 (7))
[ ] _____ $10 ASSESSMENT(S) plus [X] 3 $25 ASSESSMENT(S) totalling $ 75.00 (5 M.R.S.A. § 3360-I)
[ ] All but $_____ suspended.
[ ] Execution/payment stayed to pay in full by _____ or warrant to issue.
[ ] To pay $_____ per week / month beginning _____ or warrant to issue.
TOTAL DUE: $ 75.00 loaned (To be filled in by cashier).

CR-121, Rev. 01/01   (OVER)

EXHIBIT B



EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARGARET L. GILMORE
    Plaintiff

v.                                         Civil Action No. 04-12323-NG

AMERICAN CRUISE LINES, INC.
    Defendant

## DEFENDANT AMERICAN CRUISE LINES, INC.'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1

Log Entries and Accident Reports
    All log entries, captain's reports, crew member reports, accident reports, injury reports, or any other communication, written report or statement concerning the alleged incident, and/or the Plaintiffs alleged injuries <u>other than</u> communications and reports made to the Defendant's, insurer, adjuster and/or attorneys.

### RESPONSE NO. 1

Attached as Exhibit 1 is the AMERICAN EAGLE official log for August 5, 2002. Attached as Exhibit 2 is a memo from AMERICAN EAGLE Captain Andrew Howe dated August 7, 2002.

### REQUEST NO. 2

Statements of the Defendant
    All recorded communications, written reports and statements, which where written by, taken from, or given by the Defendant and/or any agents, servants or employees of the Defendant, concerning the Plaintiffs alleged incident, <u>other than</u> communications made to the Defendant's insurers, adjusters or attorneys.

### RESPONSE NO. 2

Please see response to Requests No. 1 and No. 4.

**REQUEST NO. 59**

Crew list for the AMERICAN EAGLE from three years prior up until the alleged incident.

**RESPONSE NO. 59**

Attached as Exhibit 15 is the crew list for the voyage in question. Defendant objects to production of crew list for 3 years up until the alleged incident as not calculated to lead to the discovery of relevant evidence.

**REQUEST NO. 60**

Any and all documents regarding the Plaintiffs alleged incident.

**RESPONSE NO. 60**

Please see prior responses. Defendant objects to this request as being vague and unduly burdensome. Defendant further objects because any additional documents would include trial-preparation and attorney-client privileged documents.

**REQUEST NO. 61**

Any and all documents regarding policies, rules, regulations regarding crew drinking and intoxication.

**RESPONSE NO. 61**

Attached as Exhibit 16 is a portion of the 2005 AMERICAN EAGLE Operations Manual Section 1.7, 3.22, Part O. There is no 2002 Operations Manual in existence.

**REQUEST NO. 62**

Any and all documents regarding hiring practices, policies and procedures from five years prior to the alleged incident to present.

**RESPONSE NO. 62**

Defendant has no documents in response to Request No. 62.

                         AMERICAN CRUISE LINES, INC.
                         By its attorneys,

March 18, 2005

                         Bertram E. Snyder, BBO#471320
                         Patrick O. McAleer, BBO#642627
                         LOONEY & GROSSMAN, LLP
                         101 Arch Street
                         Boston, Massachusetts 02110
                         (617) 951-2800

### Certificate of Service

I hereby certify that on this 18th day of March 2005, I served the foregoing by hand a copy thereof, to Carolyn Latti, Esq., Latti & Anderson LLP, 30-31 Union Wharf, Boston, MA 02109.

                         Bertram E. Snyder



EXHIBIT
D

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET L. GILMORE<br>Plaintiff<br><br>V.<br><br>AMERICAN CRUISE LINES, INC.<br>Defendant | Civil Action<br><br>No. 04-12323-NG |

### PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO THE PLAINTIFF

Q. #1. Please list the names and last known addresses of all medical providers – e.g. doctors, hospitals, psychologists, nurse practitioners, HMO's who have given medical care to plaintiff for the period August 5, 2000 to date.

A. #1.

Donald DeBlock, M.D.
P.O. Box 2696
176 South Bay Road
South Hamilton, MA 01982

Naomi Rucker, M.D.
315 Commercial Drive
Savannah, GA 31406

Miles Memorial Hospital
35 Miles Street
Damariscotta, ME 04543

Dr. Kimberly Pearson
15 Parkman Street, #812
Boston, MA 02114

Dr. Michael Jackson
5311 Paulsen Street
Savannah, GA 31405

Dr. Ilan Borenstein

1

After the attack, Plaintiff remembers talking with the Captain, Mr. Cutone, Ms. Swords and other crew members who she does not remember their names. Since Plaintiff has left the vessel she has not talked with any crew members.

Plaintiff did speak with a woman in the home office after the sexual attacks regarding her pay.

See answer to Interrogatory #7, 8.

Q. #7. Does plaintiff or anyone acting for the plaintiff have any written or recorded statements of witnesses to the events of August 5, 2002.

A. #7. Yes.

Q. #8. If the answer to Interrogatory No. 7 is yes, please state the names, addresses of each person giving the statement, the date said statement was obtained – whether written or recorded and the name and address of the person obtaining said statement.

A. #8. James Comfort, Jr. an employee of Latti & Anderson LLP, 30-31 Union Wharf has taken a tape recorded statement of the following individuals:

Heather Bartlett
359 Eastview Avenue
Somerset, MA 02726
December 31, 2004

Carrie Deschene
90 Ashland Street, Apt. B
Jewett City, CT 06351
April 7, 2005

Ruark Downey
470 15th Street
Brooklyn, NY 11215
November 29, 2004

Benjamin Kirchmyer
1130 Pond Street
Franklin, MA 02038
April 7, 2005

Lindsay Raczka
301 Bozrah Street
Bozrah, CT 06334
April 5, 2005

Ben Rosenblatt
185 15th Street
NY, NY
November 22, 2004

Kate Swords
12 State St.
Westfield, MA 01085
December 16, 2004

Q. #9. For the period August 6, 2000 to the present, please state the names and addresses of all plaintiff's employer's, the dates of said employment, the plaintiff's present job responsibilities and the amounts earned.

A. #9. Prior to the sexual attacks, Plaintiff worked in the following jobs:

2002   Jacobi & Associates, P.A.
       Four Militia Drive, Suite 14
       Lexington, MA 02421

       Dr. Paul Flachner
       Lincoln, MA

       Ulta Salon and Cosmetic & Fragrance, Inc.
       1135 Arbor Drive
       Romeoville, IL 60446

       New Vista Enterprises LLC
       Suite 203 313 S Greene Street
       Greensboro, NC 27401

       American Lines Ltd
       One Marine Park
       Haddam, CT 06348

2001   Westbrook Country Club
       Savannah, GA
       Membership director

       Jacobi & Associates, P.A.
       Four Militia Drive, Suite 14
       Lexington, MA 02421

       Hall Construction Company, Inc.
       P.O. Box 3908

8

```
                                                      Page 1
 1                      VOL: I
                        PAGES: 1-118
 2                      EXHIBITS: 1-4
               UNITED STATES DISTRICT COURT
 3             DISTRICT OF MASSACHUSETTS
 4
        * * * * * * * * * * * * * * * * *
 5      MARGARET I. GILMORE          *
                  Plaintiff    *
 6                             *
                -vs-            *    Docket No.
 7                             *    04-12323-NG
        AMERICAN CRUISE LINES, INC.  *
 8                Defendant    *
        * * * * * * * * * * * * * * * * *
 9
10
11      DEPOSITION of CHARLES A. ROBERTSON, a witness called
12  on behalf of the Plaintiff, pursuant to the applicable
13  provisions of the Federal Rules of Civil Procedure,
14  before Rosemarie J. Brennan, a Notary Public and
15  Shorthand Reporter within and for the Commonwealth of
16  Massachusetts, at the offices of Latti & Anderson,
17  LLP, 30-31 Union Wharf, Boston, Massachusetts 02109,
18  on Tuesday, July 7, 2005, commencing at 9:30 a.m.
19
20
21
22
              HENNESSEY CORPORATION d/b/a
23             ROBERT H. LANGE CO., INC.
                 50 CONGRESS STREET
24            BOSTON, MASSACHUSETTS 02109
```

```
                                                      Page 2
 1  APPEARANCES:
 2  LATTI & ANDERSON LLP
    (by Carolyn M. Latti, Attorney-at-Law)
 3  30-31 Union Wharf
    Boston, Massachusetts 02109
 4       On behalf of the Plaintiff;
 5
    LOONEY & GROSSMAN, LLP
 6  (by Bertram Snyder, Attorney-at-Law)
    101 Arch Street
 7  Boston, Massachusetts 02110-1112
         On behalf of the Defendant:
```



EXHIBIT E

```
                                                      Page 3
 1                      I N D E X
 2
 3   WITNESS        DIRECT  CROSS  REDIRECT  RECROSS
 4   Charles A. Robertson
 5   (by Ms. Latti)    4
 ...
13   NO.         EXHIBIT              PAGE
14   1    Operations Manual             33
     2    Page From Official Log Book   111
15   3    Memo Dated 8/12/02 to CAR. S. Renner   115
     4    Memo Dated 8/12/02 From Tim Beebe      115
```

```
                                                      Page 4
 1             CHARLES A. ROBERTSON
 2      having been satisfactorily identified and
 3      duly sworn by the Notary Public, was examined
 4      and testified as follows:
 5             DIRECT EXAMINATION
 6  Q    (By Ms. Latti: Good morning. My name is Carolyn
 7  Latti. I represent Margaret Gilmore in this
 8  action. I'm going to be asking you some
 9  questions this morning. If at any time you
10  don't understand a question, please ask me to
11  rephrase it. You have to give your response in
12  words rather than gestures because the reporter
13  can't take it down. If at any time you want to
14  take a break, just let me know. Could you ---
15       Mr. Snyder: Usual stips, Carolyn?
16       Ms. Latti: Usual, and is he produced party
17  to the 30 (b) 6?
18       Mr. Snyder: He's the president of the
19  company. And waive notary because I would like
20  him to read and sign.
21       Ms. Latti: That is fine..
22  Q    Your name for the record?
23  A    Charles Robertson.
24  Q    Your current address?
```

1 (Pages 1 to 4)

Hennessey Corp d/b/a Robert H. Lange Co.
617-523-1874

266c1139-6265-4121-b9f2-3005a864d93f

### Page 25

1  employment, which I don't recall.
2  Q  Has any mate, chief mate ever complained about
3     Captain Howes?
4  A  No. Or not that I know of.
5  Q  focusing on 2002, that year to focus on kind of
6     what occurred, hiring practices, can you tell me
7     in 2002 when you wanted to hire crew for the
8     vessel what the procedure was and how, if there
9     is any guidelines for hiring individuals?
10 A  This is what kind of crew?
11 Q  2002 it would be for, let's say we're dealing
12    with the chef and assistant hotel manager or
13    hotel manager, and this is, excuse me, I'm
14    saying prior to the attack August of 2002, so
15    January 2002 up to August 2002 what was the
16    hiring procedure of American Cruise Line?
17       Mr. Snyder:  Object to the form of the
18    question. You may answer.
19 A  I believe advertised for positions, took in
20    applications, check references, interview
21    people, believe got their school transcripts,
22    but I am not sure we did that back then.
23    Probably didn't do that back then. That's it as
24    far as I know.

### Page 26

1  Q  Was there any type of criminal check at that
2     point?
3  A  Not that I know of.
4  Q  Do you do any type of criminal check now?
5  A  No.
6  Q  Was there any question, you said filled out
7     applications, was there any question on the
8     application as to past criminal history or
9     anything?
10 A  I believe there is.
11 Q  You believe there is now, or at the time?
12 A  I believe there always was.
13 Q  Did they, did the prospective employee have to
14    do a drug test?
15 A  Yes.
16 Q  That was in existence in 2002?
17 A  I believe so. It was for the operating crew
18    required on the certificate, and I believe we
19    tested everybody.
20 Q  Would you divide the crew as operating crew and
21    hotel crew?
22 A  Yes.
23 Q  From January 2002 to August of 2002 was there a
24    specific individual that would do the hiring or

### Page 27

1     was in charge of the person interviewing people?
2  A  No.
3  Q  Once a person was hired to go upon the AMERICAN
4     EAGLE was there any type of training required
5     that was set up by American Cruise Line?
6  A  Depending on the position and when that training
7     occurred. Was your question before they went on
8     the vessel?
9  Q  Either, I mean we can break it up.
10 A  Sometime before they went on the vessel, and in
11    all cases after they went on the vessel, talking
12    about training for the hotel crew, what type of
13    training would they go through? Two or three
14    day shoreside classroom, primarily focused at
15    the stewards, but in attendance were possibly
16    also hotel managers and chefs.
17 Q  What was taught during the two-to-three days?
18 A  Excuse me?
19 Q  What would be taught during that two-to-three
20    days?
21 A  Company operations manual, a lot of focus on
22    safety, which is really mostly what is in the
23    operations manual. There was some on grooming,
24    how to conduct themselves around with passengers

### Page 28

1     and other crew members. Serving techniques,
2     housekeeping techniques, making beds, doing that
3     kind of thing.
4  Q  Would any videos be shown or ---
5  A  There is a --- I don't know if it was around.
6     I'm not sure whether it was there in 2002, but
7     there may have been a power point.
8  Q  Who would give the presentation or be the head
9     trainer?
10 A  I don't know during that year.
11 Q  Was there a specific person, if you don't know
12    the person, was there a specific job
13    classification? Was there someone in personnel?
14    I understand it wasn't someone in accounting.
15 A  Could have been Paul Taiclet. Could have been
16    one of the hotel managers. Marilou Jude. Mary
17    Squalia (phonetic spelling). I'm sure I'm
18    pronouncing her name incorrectly.
19 Q  If there was just one?
20 A  There's somebody else, and I can't recall his
21    name, who might very well have done the training
22    that year. I can't recall his name.
23 Q  Would the training, onshore training occur if it
24    was one person, or would it occur only if there