UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET L. GILMORE )<br>    Plaintiff )<br>)<br>v. )<br>)<br>AMERICAN CRUISE LINES, INC. )<br>    Defendant )<br>) | Civil Action No. 04-12323-PJB |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO RECONSIDER COMPELLING PLAINTIFF TO SIGN HIPAA MEDICAL AUTHORIZATIONS**

**I.   FACTS[1]**

On or about November 1, 2004 Margaret L. Gilmore[2] filed suit claiming injuries sustained on or about August 5, 2002 while acting as a seaman and member of the crew of Defendant American Cruise Lines, Inc.'s ("ACL") AMERICAN EAGLE. (Complaint ¶s 5, 11). Her injuries included "anguish of mind," "pain of body" and "medical expenses" (Complaint ¶s 17, 21, 29). The Plaintiff's ad damnum is $10,000,000 for her Jones Act and unseaworthiness claims. In open Court on December 6, 2005, plaintiff's counsel indicated her client was in rehab. In answer to defendant's written request, plaintiff's counsel by a voicemail on December 16 indicated the rehab would not be said to be incident related.

ACL does not contest that on or about August 5, 2002 there was an incident on its AMERICAN EAGLE involving Ms. Gilmore and then AMERICAN EAGLE Chef Michael Romero. Mr. Romero was immediately removed from the AMERICAN EAGLE and ultimately plead guilty to sexual assault charges in Maine where he is currently incarcerated.

---

[1] Factual allegations herein are made under the penalties and pain of perjury.
[2] Margaret Gilmore is the married name of Margaret Jacobi who was an AMERICAN EAGLE crewmember on August 5, 2002.

What is bitterly contested is the severity of the events of the night of August 5, 2002 including whether or not an actual rape occurred. A rape has not been established by any medical evidence. Also the extent of Ms. Gilmore's continuing "anguish of mind" is very much disputed. Ms. Gilmore had a long history of emotional issues prior to August 5, 2002.

ACL seeks Plaintiff's medical records from the twenty-one (21) medical providers listed in her answer to ACL interrogatory no. 1. Plaintiff refuses to sign the necessary HIPAA Authorizations. (Plaintiff's counsel August 22, 2005 letter)(Bertram E. Snyder (BES) Aff., ¶ 1).

## II.   ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Discoverable information is not limited to that which would be admissible at trial. At the discovery stage of litigation, the evidence sought need only be relevant, and "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts have held that "it is not for a party to determine, by a unilateral review of documentation, whether information is relevant to the case." Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 135 (E.D. Pa. 2001). Whether the records are actually admissible in evidence will depend, among other things, on whether they are privileged. Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004).

### A. Mental Health Records

The Plaintiff should be compelled to authorize release of her mental health records. The Health Insurance Portability and Accountability Act ("HIPAA") does not create privilege. The HIPAA regulations create a purely procedural method for obtaining health information. Glen v.

Potter, 2005 U.S. Dist. LEXIS 27806 (D. Ill. 2005).  See Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d at 926.

In Jaffee v. Redmond, 518 U.S. 1 (U.S. 1996), the Supreme Court did recognize a psychotherapist privilege under federal common law applying to confidential communication made between licensed mental health professionals and their patients.  However, the Court noted that the patient can waive this privilege.  Id. at 15.  The Court in Jaffe held that the specific contours of the privilege were left to be determined by the lower courts on a case-by-case analysis.  Id. at 18.

Since the psychotherapist/patient privilege was first delineated in Jaffee, two lines of cases have emerged addressing the circumstances in which the privilege has been waived.  The first line of cases takes a broad view, those courts have held that by making a claim of damages for emotional distress, the patient/litigant has put his/her mental state at issue, and thus waives his/her psychotherapist/patient privilege.  Speaker v. County of San Bernardino, 82 F. Supp. 2d 1105, 1118 (D. Cal. 2000).  The other line of cases takes a significantly narrower view, holding that a Plaintiff who claims emotional distress or emotional injury does not waive the psychotherapist patient privilege so long as they do not introduce any evidence of the substance of any communication with a psychotherapist.  Vanderbilt v. Town of Chilmark, 174 F.R.D. 225 (D. Mass. 1997).

The majority of the courts which have considered this issue have adopted a broad interpretation of waiver.  Speaker, 82 F. Supp. 2d at 1118.   Those courts have held that by claiming damages for emotional distress, the patient/litigant places his/her mental state at issue, and that constitutes an implicit waiver of privilege.  Id.  See Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir.2000) (finding that claims alleging emotional distress put Plaintiff's emotional

state at issue and result in an implied waiver of the privilege of psychiatric-patient communications.), and cases cited therein; see also <u>Rankin v. Liberty Mut. Ins. Co.</u>, 1995 U.S. App. LEXIS 6150 (1st Cir. 1995) (finding that Plaintiff waived the privilege when she "alleged that Defendant's discrimination and intentional torts had caused her permanent psychological injury which had disabled her from all employment."); <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1401-2 (9th Cir. 1994) (finding waiver when Plaintiff claimed damages of emotional distress and severe depression).

The rationale for the majority of courts finding an implicit waiver was well-stated by the court in <u>Sidor v. Reno</u>, 1998 U.S. Dist. LEXIS 4593 (D.N.Y. 1998):

> Although plaintiffs do not intend to introduce expert testimony regarding damages due to emotional distress, defendant correctly points out that plaintiffs can establish their emotional distress claim through their own testimony. Defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related.

<u>Sidor v. Reno</u>, 1998 U.S. Dist. LEXIS 4593 (D.N.Y. 1998). *quoting* <u>Lanning v. Southeastern Pennsylvania Transportation Authority</u>, 1997 U.S. Dist. LEXIS 14510, 1997 WL 597905 (E.D. Pa. Sept. 17, 1997).

Similarly, in <u>Equal Employment Opportunity Comm'n v. Danka Industries, Inc.</u>, 990 F. Supp. 1138 (E.D. Mo. 1997), the court, in a Title VII case, held that the Defendant was entitled to discover to what extent the Plaintiffs' mental condition, prior to the alleged harassment, may have contributed to any emotional distress for which they were seeking damages. <u>Id.</u> at 1142. The court found the mental condition of the Plaintiffs to be directly related to the issue of damages. <u>Id.</u>

Not surprisingly, the Plaintiff's rely on the minority viewpoint to support their argument for privilege. The problem is, the Court in <u>Jaffee</u> stated that details of this privilege were to be

defined on a "case-by-case" basis.  <u>Jaffee</u>, 518 U.S. at 18.   In the present case, the majority viewpoint is more analogous and more appropriate.

In this case, as in <u>Sidor</u> <u>supra</u>, the Plaintiff can easily establish her claim for mental anguish without the use of expert testimony.  It is not difficult to establish that a sexual assault can cause mental anguish.  This creates an unfair circumstance because Defense counsel should have a right to inquire into Plaintiff's past for the purpose of showing that her mental anguish was caused, at least in part by, events and circumstances that were not related to the subject of this litigation.

Essentially, the Plaintiffs have asked the court to allow them to make a claim for mental anguish, but disallow the Defendant from discovering information about the myriad of possible causes of that anguish.  If the records show that certain stress factors pre-dated the assault, or that other factors unrelated to this litigation occurred after the assault, then Defendant could show that Plaintiffs' claims are possibly overstated.

In <u>Equal Employment Opportunity Comm'n</u>, the court stated, "Finally, fairness requires a waiver of privilege. Plaintiffs cannot rely on advice given by certain psychotherapists to support their claims while at the same time expect to keep confidential advice given by other psychotherapists that may weaken their claims." <u>Equal Employment Opportunity Comm'n</u>, 990 F. Supp. at 1142.  This is essentially what the Plaintiffs have done in this case by arguing that the Defendants already have the records of Dr. DeBlock and Dr. Rucker.  (Complaint ¶s 17, 21, 29).  By offering these two particular doctor's records, the Plaintiffs are essentially allowed to divulge what they want, and to independently assess the extent of harm caused by Defendant's actions when compared to other, unrelated stress factors.  "Though convenient to Plaintiffs, this approach is unsatisfactory to our adversarial system of justice.  It would be unfair to allow

Plaintiffs to unilaterally determine the amount of harm Defendant caused, without allowing the Defendant or the fact-finder to argue, consider and weigh other relevant factors of emotional stress." Sanchez, 202 F.R.D. at 136.

To allow Plaintiffs to make a claim for mental anguish, but shield information related to their claim, is plainly unjust. In order to allege and recover for a harm, Plaintiffs need to show the existence and extent of the harm. The particular value of the harm is best left to the fact-finder, after a careful view of the facts. The only way to adequately review the facts is to bring to light relevant information. For these reasons, the court should compel the plaintiff to authorize disclosure of her mental health records.

### B. Non-Mental Health Records

The Plaintiff should be compelled to authorize disclosure of her non-mental health records as well. "Federal common law does not recognize a physician-patient privilege." Patterson v. Caterpillar, Inc., 70 F.3d 503, 506-07 (7th Cir. 1995). (citing Whalen v. Roe, 429 U.S. 589, 602 n.28, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977)).

Indeed, even if there were any physician-patient privileges that may be applicable here, the Plaintiff has waived that privilege by the commencement of this action. By commencing this action and seeking damages for medical injuries, the Plaintiff has placed her relevant medical condition at issue. Magee v. Paul Revere Ins. Co., 172 F.R.D. 627, 634-35 (S.D.N.Y. 1997).

Contrary to the assertions of the Plaintiff that there is "no claim of physical injury" (Pl.['s] Mem. Opp'n Def ['s] Mot. Compel at 12), Plaintiff's have made a claim for damages alleging "pain of body" and "medical expenses." (Complaint ¶s 17, 21, 29). By making this claim in the Complaint, the Plaintiff has placed her physical health at issue in this case and consequently waived any privilege that could have existed.

Similar to the mental health assertions above, the Plaintiff is asking the court to allow them to make a claim for physical pain, but disallow the Defendant from discovering information about any possible alternative causes of that pain. If the medical records were to display any previous or subsequent injuries that may have caused, or be currently causing, the Plaintiff's pain, then it is possible the Defense could show that the Plaintiff's claim is overblown or exaggerated.

It would not be just for the court to allow the Plaintiff to make a claim for physical pain without allowing the defense an opportunity to assess any possible mitigating factors that exist with regard to the Defense's liability for that pain.

### III.    CONCLUSION

Because Ms. Gilmore has claimed emotional and physical injuries, and her past emotional and physical injuries are all major factual issues, and because the interests of justice require ACL have access to Plaintiff's medical records, this motion should be allowed.

                                                DEFENDANT
                                                By its attorney,


December 19, 2005                         /s/ Bertram E. Snyder
                                                Bertram E. Snyder, BBO#471320
                                                LOONEY & GROSSMAN, LLP
                                                101 Arch Street
                                                Boston, MA 02110
                                                (617) 951-2800

CERTIFICATE OF SERVICE

    I hereby certify that on the 19th day of December 2005, I served the foregoing by first class mail, postage prepaid and email, to Carolyn Latti, Esq., Latti & Anderson LLP, 30-31 Union Wharf, Boston, MA 02109.


        /s/ Bertram E. Snyder
    Bertram E. Snyder